Hart, J.
 

 The appellee refused to accept the referral of the bureau to a nonunion employment because, as he claims, .working therein would have resulted in a violation of the rules of his union and might have subjected him to disciplinary action by the union.
 

 The validity of his excuse for refusal to accept new employment, as it affects his right to receive unemployment compensation, depends upon his fitness for the work made available to him. In turn, his fitness for employment was specifically fixed by the Ohio Unemployment Compensation Act.
 

 Section 1345-6 a (4) (5), General Code (119 Ohio Laws, 836), provided:
 

 “a. No'individual shall be entitled to any benefits unless he or she * * *
 

 “(4) is able to work and available for work in his •usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted; and
 

 “(5) is unable to obtain work in his usual trade or occupation or any other employment for which he is reasonably fitted including employments not subject to this act.”
 

 Section 1345-6 d (2), General Code (119 Ohio Laws, 836), provided:
 

 “d. Notwithstanding the provisions of subsection
 

 (a) of this section, no individual may * * * be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual: * # *
 

 
 *562
 
 “(2) has refused to accept an offer of work for which he is reasonably fitted; * *
 

 The act then describes certain specified circumstances of employment under which a refusal to accept new work will not operate to deny the applicant’s right to receive benefits. The non-disqualification provision under consideration in the instant case is found in Section 1345-6 e (1), G-eneral Code, which reads as follows:
 

 “e. No individual-otherwise qualified-to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:
 

 “ (1) As a condition of-being so employed, he would be required to join a company union, or to resign from or refrain from joining any
 
 bona fide
 
 labor organization, or would be denied the right to retain membership in and observe the lawful rules of any such organization. ’ ’
 

 The Board of Review of the Bureau of Unemployment Compensation placed its interpretation on these statutes in the following language:
 

 “We believe that the word ‘condition’ as used in Section 1345-6 e (1) refers to restrictions and quali-' fications contained in the offer of employment made by the employer to the prospective employee, and that it should not be interpreted to mean the ‘result’ of being so employed, as contended by claimant. In other words, if, as in- the present case, the offer of work is unconditional, the employee cannot justify his refusal thereof for the sole reason that his acceptance of said work would result in disciplinary action by his union. In our opinion, the Legislature did not intend to delegate to labor unions, through the medium of their rules and regulations, the power and authority to determine that a member should not accept a referral to work and thereby qualify such member for unemployment compensation to which he' would other
 
 *563
 
 wise not be entitled because of the refusal of such a referral.”
 

 In passing, it will be noted that the standard provision in the unemployment compensation acts as to availability is that a worker must be “able to work and available for work.” Fourteen of fifty-one jurisdictions require more than mere availability for work. One of that minority is Ohio in which the statute provides that no benefits shall be payable to one who “has refused to accept an offer of work for which he is reasonably fitted.” 22 North Carolina Law Review, 189, 191. In other words, the Ohio statute requires the bureau to consider and determine whether the applicant is so qualified by training and experience for the work offered and refused as to preclude unemployment benefits, rather than his suitability or appropriateness for the work or the suitability of the work for him as measured by his appraisal of it. See
 
 Stella
 
 v.
 
 Downyflake Restaurant,
 
 126 Conn., 441, 11 A. (2d), 848.
 

 In the phrase, “as a condition of being so employed,” incorporated in our statute, the word “condition” is the equivalent of “requisite” or “requirement.” In legal signification, the term “condition” denotes something attached to and made a part of a grant or privilege.
 
 State, ex rel. Fanger,
 
 v.
 
 Board of Public Works,
 
 42 Ohio St., 607.
 

 There follows in the statute certain named requisites which if the employer imposes upon the applicant for employment as a condition or requisite of being employed, a refusal by the applicant of such employment will not bar him from unemployment benefits. By the language of the statute, these named requisites are directly connected with and referable to the condition of being employed. They are: (1) The employee so employed shall be required to join a company union; (2) he shall be required to resign from, or to refrain from
 
 *564
 
 joining, a
 
 bona fide
 
 labor organization,- and (3) he shall be denied the right to retain his membership in any labor organization, or the right to observe its lawful rules.
 

 Appellee concedes the interpretation here suggested as to the first two requisites named in subparagraph (1) of Section 1345-6 e, General Code, but claims that the third requisite named in such subparagraph should be so construed as not to bar from unemployment benefits an unemployed person who refuses to accept any employment which might result in the denial of his right to retain membership in his labor organization through prospective disciplinary action on the part of the organization itself.
 

 In our view, this is a strained and untenable interpretation of the statute. This observation is made apparent from the fact that if the employment should result in the loss of the employee’s membership in his union by action of the union itself, the provision of the statute with reference to a denial of the right to “observe the lawful rules of any such organization” would be superfluous and meaningless. Obviously, the union itself would not deny him the right to observe the rules of the union.
 

 Furthermore, the interpretation of appellee would make the operative effect of a refusal to work depend entirely upon the whim or caprice of an organization to which the applicant for unemployment compensation might belong. It is within the range of possibility that a labor organization might adopt a rule that no member could work where negroes are employed, or where the employment calls for more than four hours as a day’s work, or where the place of business of an employer is more than a mile from the residence of the unemployed member, or where an employer fails to maintain certain facilities relating to the conditions of employment,
 
 *565
 
 even though not required by law so to do, or where an employer does not pay a wage equal to the union wage for the same kind of work.
 

 Under such an interpretation, the right of the applicant for unemployment compensation would not be fixed or determined by the provisions of the statute but by rules adopted by organizations in which the applicant has membership. Such interpretation of the statute, and as a consequence its administration in conformity to such interpretation, is clearly untenable.
 

 Arthur M. Menard, regional counsel for the Federal Security Agency in the Boston area, writing in 55 Yale Law Journal, 134, 143, although expressing the view that it might be desirable not to require a claimant to accept work if it might result in his expulsion by his labor organization, clearly states the interpretation which must be given to the phrase, “as a condition of being employed,” used in the Internal Revenue Code, which is almost the identical language used in Section 1345-6 e (1), General Code, a part of our own Unemployment Compensation Act. He says:
 

 “If a claimant is required ‘as a condition of being employed’ to resign from a
 
 bona fide
 
 labor organization, the third clause of the labor standards provision would enjoin disqualification. Where, on the other hand, expulsion from a labor organization will follow upon an individual’s taking a job to be performed under conditions contrary to union rules, the clause would not apply, for, although some decisions have stated that expulsion is tantamount to resignation,
 
 expulsion is a result of being employed and is not required ‘as a condition of being employed.’ ”
 
 (Italics ours.)
 

 If the legislative intent in the adoption of Section 1345-6 e (1) had been as claimed by the appellee, the General Assembly would have had no difficulty in giv
 
 *566
 
 ing such intent clear expression in the language of the statute. But the General Assembly did not do so, either because it did not have the intention or because it had misgivings as to constitutional contravention.
 

 In our view, the language of the statute is clear and unambiguous and does not require construction. But if construction is necessary, it is a well recognized rule that courts should, if possible, give a statute such construction as will avoid conflict with constitutional requirements and will permit it -to operate lawfully and constitutionally. 2 Sutherland Statutory Construction (3 Ed.), 326, Section 4509;
 
 Patapsco Guano Co.
 
 v.
 
 North Carolina Bd. of Agriculture,
 
 171 U. S., 345, 43 L. Ed., 191,18 S. Ct., 862;
 
 Knights Templars’ and Masons’ Life Indemnity Co.
 
 v.
 
 Jarman,
 
 187 U. S., 197, 47 L. Ed., 139, 23 S. Ct., 108;
 
 Alabama State Federation of Labor
 
 v.
 
 McAdory,
 
 325 U. S., 450, 470, 89 L. Ed., 1725, 1739;
 
 Burt et al., Assignees, v. Rattle,
 
 31 Ohio St., 116;
 
 State
 
 v.
 
 Kendle,
 
 52 Ohio St., 346, 39 N. E., 947;
 
 Toledo Commercial Co. v. Glen Mfg. Co.,
 
 55 Ohio St., 217, 45 N. E., 197;
 
 State, ex rel. Weinberger, a Taxpayer,
 
 v.
 
 Miller,
 
 87 Ohio St., 12, 99 N. E., 1078, 44 L. R. A. (N. S.), 712, Ann. Cas. 1913E, 761;
 
 State, ex rel. Myers,
 
 v.
 
 Blake, Dir.,
 
 121 Ohio St., 511, 169 N. E., 599. That interpretation of legislation will be favored which gives it the greater chance of surviving the test of constitutionality.
 
 Ex parte Endo,
 
 323 U. S., 283, 299, 89 L. Ed., 243, 254.
 

 Section 1 of the Fourteenth Amendment to the federal Constitution provides:
 

 “* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
 

 
 *567
 
 Section
 
 2,
 
 Article I of the Ohio Constitution provides: “All political power is inherent in the people. Government is instituted for their equal protection and benefit * *
 

 Under appellee’s interpretation of the statute, an unemployed nonunion workman would be obliged to accept the same job which the appellee refused to accept and would be required to work without right to participate in the unemployment compensation benefits. On the other hand, the appellee could refuse to accept the same job at the same wages and by reason of such refusal qualify himself to receive benefits as an unemployed workman. In our view, such an interpretation of the statute would not permit it to operate in a constitutional manner. It would result in discrimination and injustice. The law must do justice. There can be no valid classification of persons based upon membership or nonmembership in a labor organization, which would operate to differentiate rights to receive benefits under the unemployment compensation statute.
 

 Some fifteen years ago in certain cases presently cited, this court endorsed the doctrines of freedom of contract in employment and equal opportunity for employment. In our view, the social, political and industrial progress of later years has not successfully challenged the truth or validity of these fundamental doctrines and for that reason they must be again affirmed. The equality of men in legal right is a most sacred principle which must never be lost out of our social and political structure; and, in the long run, to no class or group of persons is the preservation of these principles more important than to labor. This includes freedom in the right to refuse as well as the right to accept work, but it must be remembered that refusal to work, when qualified and when work is avail
 
 *568
 
 able, may preclude the right to participate in unemployment benefits.
 

 Judge Allen, in the case of
 
 La France Electrical Construction & Supply Co.
 
 v.
 
 International Brotherhood of Electrical Workers, Local No. 8,
 
 108 Ohio St., 61, 95, 140 N. E, 899, wherein this court was called upon to protect and did protect the lawful rights of union labor, very appropriately said:
 

 “Equality of justice demands that in any controversy the rights of all parties be scrupulously maintained. The right of workmen to be employed, irrespective of union membership, must be maintained ■» # #
 
 9 9
 

 This court has heretofore held that as to the right to work and to earn a living there can be no distinction between union and nonunion workmen, and by the same token there can be none as to the right to receive unemployment compensation. In the case of
 
 State, ex rel. United District Heating, Inc.,
 
 v.
 
 State Office Bldg. Comm.,
 
 124 Ohio St., 413, 179 N. E., 138, 80 A. L. R., 1376, this court held that a public-work contract could not be cancelled because the contractor proposed to hire its workmen without discrimination as to affiliation with a labor union. In the course of the opinion in that case this court said:
 

 “This court has heretofore held that mandamus may not be employed to control the.discretion of an administrative board unless such discretion has been abused; but that principle cannot possibly apply where the discretion is arbitrarily exercised and based solely upon the ground that one class, and only one class, of labor should be employed, and especially is this so when the exercise of this discretion results in abridging constitutional guaranties to a citizen or in denying him the equal protection of the laws.”
 

 The principles involved in the case just cited were
 
 *569
 
 reaffirmed by this court in the case of
 
 State, ex rel. United District Heating, Inc,,
 
 v.
 
 State Office Bldg. Comm.,
 
 125 Ohio St., 301, 181 N. E., 129, wherein this court held that a public contract may not be denied to the lowest bidder upon the sole ground that he employs only union labor or upon the sole ground that he does not employ exclusively union labor. See, also,
 
 Miller
 
 v.
 
 City of Des Moines,
 
 143 Ia., 409, 122 N. W., 226, 23 L. R. A. (N. S.), 815;
 
 Lewis
 
 v.
 
 Bd. of Edn. of City of Detroit,
 
 139 Mich., 306, 102 N. W., 756;
 
 Adams
 
 v.
 
 Brenan,
 
 177 Ill., 194, 52 N. E., 314, 69 Am. St. Rep., 222, 42 L. R. A., 718; and
 
 Holden
 
 v.
 
 City of Alton,
 
 179 Ill., 318, 53 N. E., 556.
 

 In the case of
 
 Miller
 
 v.
 
 City of Des Moines, supra,
 
 the court said:
 

 “The citizen may be rich or poor in purse; union or nonunion upon the labor question; Catholic, Protestant, Jew, or infidel in matters of religion; Republican, Democrat or Prohibitionist in political affiliation ; but, by the standard of constitutional and statutory right, he is neither more nor less than a citizen of the state, entitled to an equal opportunity therein according to the capacity and ability with which nature may have endowed him. ’ ’
 

 The allowance of unemployment benefits cannot be aided or hindered by the claimant’s membership in any organization. The right of the claimant must not depend upon union or nonunion status. Where the provisions of a statute and a rule of a private organization to which an applicant for unemployment compensation belongs, both affecting the qualification of such applicant to receive benefits, come in conflict as they do in this case, which must prevail? Unquestionably, the statute under which the compensation benefits are authorized and made available must prevail.
 

 It should be the aim of the Bureau of Unemployment
 
 *570
 
 Compensation, so far as possible, to refer an unemployed union employee to a union job and a nonunion employee to a nonunion job and thus accommodate the job to the situation of the unemployed person, but it must be recognized that the matter of unemployment places upon the bureau a most difficult administrative task, and that, when periods of unemployment come, jobs become scarce and oftentimes unavailable. Under such circumstances, the bureau must be given a large measure of discretion in its referrals and placements as they affect the right of a claimant for compensation.
 

 Unemployment compensation is based upon the philosophy that employment and not unemployment is the goal to be attained; that payments are always limited to persons who are involuntarily unemployed; and that labor, as well as industry, must co-operate in all reasonable measure in the proper administration of the law. The validity of the reason given by the appellee for his refusal to accept the work offered him rests upon conjecture and is unsupported by evidence of fact. There is no evidence that he requested from his union a permit to accept the employment and there is none to the effect that the union would not have granted such a request if it had been made. It would seem that when a member of a labor organization is so unfortunate as to become unemployed and unable himself or through his organization to find suitable employment, such organization, in view of its objectives and in view of the benefits which membership in such organization affords, should permit such member to accept what is otherwise suitable employment rather than to insist on the observance of a rule, the violation of which calls for disciplinary action against him.
 

 Pursuant to the spirit and purpose for which the Unemployment Compensation Act was adopted, it
 
 *571
 
 should not be administered upon a tax-reducing and fund-protecting basis, but rather in the interests of the persons for whose relief it was intended. To that end, increased compensation funds should be applied to the increase of rates and compensation periods for those unfortunate enough to become involuntarily unemployed, rather than to the support of an increased volume of unemployment by the inclusion therein of those who are physically able to accept employment for which they are fitted.
 

 In any event, government cannot abdicate and permit any person or group of persons by private action or determination to qualify or disqualify an applicant for governmental benefits such as old-age pensions and workmen’s or unemployment compensation. On the contrary, an applicant for such benefits may be obliged to suffer disqualification for participation in such benefits if he attaches as a requisite to his employment some condition which is in conflict with a uniform administration of the law.
 

 The case of
 
 W. H. H. Chamberlin, Inc.,
 
 v.
 
 Andrews, Commr.,
 
 271 N. Y., 1, 2 N. E. (2d), 22, 106 A. L. R., 1519, relied upon by appellee, is no authority upon the questions involved in the instant case. Incidentally, it should be noted that the weight of the' decision in that case as a precedent is weakened by the fact that two judges dissented and that while the judgment was affirmed by the Supreme Court of the United States, the affirmance resulted because of an equally divided court. (299 U. S., 515, 81 L. Ed., 380, 57 S. Ct., 122.) An affirmance In the federal Supreme Court upon an equal division of opinion is not an authority for the determination of other cases, either in that court or in the inferior federal courts.
 
 Hertz, Collector,
 
 v.
 
 Woodman,
 
 218 U. S., 205, 54 L. Ed., 1001, 30 S. Ct., 621;
 
 Williams
 
 v.
 
 New York P. & N. Rd. Co.,
 
 11 F. (2d), 363.
 
 *572
 
 See
 
 Bd. of Edn. of City School Dist. of Columbus
 
 v.
 
 City of Columbus,
 
 118 Ohio St., 295, 299,160 N. E., 902. In the first place, the New York statute considered in the
 
 Chamberlain case
 
 is in no sense comparable to our statute in that the former provides that “no employee otherwise qualified to receive benefits shall Jose the right to benefits by reason of a refusal to accept employment if (a) acceptance of such employment would either require the employee to join a company union or would
 
 interfere with his joining or retaining membership
 
 in any labor organization.” (Italics ours.) In the second place, the only questions raised in that case with reference to the constitutionality of the New York statute related to its effect upon an employer due to its compulsory features, the claim being made that as to him it violated the “due process,” “equal protection of the laws,” “freedom of contract,” and taking “property without due process of law” provisions of the New York and federal constitutions. The court held in that case that the statute was not unconstitutional as to an employer required to comply with it, but no question was made as to limitations on the right of the applicant to receive benefits under the law.
 

 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Williams, Turner and Matthias, JJ., concur.
 

 Zimmerman and Bell, JJ., dissent.