MILLS *v.* MISSISSIPPI EMPLOYMENT SECURITY COMMISSION

No. 40210 October 8, 1956 89 So. 2d 727

*Jackson & Ross,* Jackson, for appellant.

*Harry M. Bryan,* Jackson, for appellee.

ARRINGTON, J.

Paulee Mills, the appellant, appealed from a judgment of the Circuit Court of Pearl River County affirming a decision of the Board of Review of the Mississippi Em-

ployment Security Commission wherein unemployment compensation benefits were denied the appellant. The appellant filed his application for benefits under the Unemployment Compensation Act, which is known as the Mississippi Employment Security Law, Sec. 7368, et seq., Mississippi Code of 1942, as amended.

The appellant stated in his application that the minimum rate of pay he would be willing to accept for work was $2.32 per hour; that this rate of pay was the present union scale and that the non-union scale varies from $1.50 to $2.32 per hour. His claim was disallowed and he made application for a reconsideration of the decision, and in said application stated: "If I accepted a wage less than the local union scale, $2.32 per hr., I would be subject to a $100 fine or be expelled from the union. Since this is my trade, I want to continue in good standing and keep my union membership." The claim was again denied. The appellant was then given a hearing before the referee, and his claim was denied. Appellant then appealed to the board of review, which heard additional testimony, and the claim was again denied. The Board of Review, in its finding of fact, said: "This appellant is without work for the simple reason that he will not accept any work at an hourly rate of less than $2.32 as fixed by his union, and will not accept non-union work." The Board further said: "In our opinion, appellant is not available for work within the contemplation of the Mississippi Employment Security Law," and adopted the referee's opinion.

The sole question presented on this appeal is whether or not under the provisions of the employment security law a union member may refuse to accept non-union employment by stating that he will not work for less than the union scale fixed by contract duly negotiated through collective bargaining and be denied unemployment benefits provided under the act.

Section 7378 of the Mississippi Code of 1942 sets forth the benefit eligibility conditions, and provides that an

unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that "he is able to work and is available for work." The purpose of the law and its policy is stated in Section 7369, Code of 1942, as follows:

"As a guide to the interpretation and application of this Act, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. *Involuntary unemployment* is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves *to be used for the benefit of persons unemployed through no fault of their own.*" (Emphasis ours).

It is to be observed from the reading of the above that the unemployment must be involuntary and that the benefits must be used for persons unemployed through no fault of their own.

It will be further observed that the Act makes no distinction between union and non-union members, as they are both protected in their rights as to union membership under Section 7379(d) (2), Code of 1942, which provides:

"Notwithstanding any other provision of this act, no work shall be deemed suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."

We are of the opinion that the appellant was not available for work under the act for the reason that he did not comply with the conditions of the statute in that he would not accept work for less than $2.32 per hour.

This Court has not been called upon heretofore to decide this question, however, courts of other states which have a similar law have uniformly held that an unemployed person must comply with all the prerequisites of the act in order to claim the benefits thereunder.

In Dwyer v. Appeal Board of Michigan Unemployment Compensation Commission, et al., 32 N.W. 2d 434, the Supreme Court of Michigan said:

"We now come to the most important question of the case: What is the meaning of the word 'available' as it is used in Section 28(c) of the act? In section 2 of the act, the legislature declared: '*Involuntary* unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burdens which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against *this hazard* of our economic life.' (Emphasis supplied)

"In view of this declaration of public policy, it is evident that the purpose of the Unemployment Compensation Act is to provide protection against the evils incident to involuntary unemployment, and thus, to foster social and economic security for the people of our State. The act is intended to provide benefits for those who are unemployed through no fault of their own, who are willing, anxious, and ready to obtain employment so that they may support themselves and their families. It is intended to benefit persons who are genuinely attached to the labor market, and who are unemployed because of conditions therein over which they have no control. All of the provisions of the act must be read and construed with this public policy in mind.

"The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market. To be available for work within the meaning of the act, the claimant must be genuinely attached to the labor market, i.e., he must be desirous to obtain employment, and must be willing and ready to work. Such is the rule in other jurisdictions. See Reger v. Administrator of Unemployment Comp. Act, 132 Conn. 647, 46 A. 2d 844; Hunter v. Miller, 148 Neb. 402, 27 N.W. 2d 638, and see also, Ford Motor Co. v. Unemployment Comp. Com., 316 Mich. 468, 25 N.W. 2d 586, 588, in which we held that a claimant who limited her availability for employment to work on a specific shift was not eligible for benefits, saying, 'one may not be regarded as exposed unequivocally to the labor market unless willing and able to accept employment that he is qualified to perform.' "

In Unemployment Compensation Com. v. Tomko, 192 Va. 463, 65 S.E. 2d 524, 25 A.L.R. 2d 1071, it is said:

"As used in the statute, the words 'available for work' imply that in order that an unemployed individual may be 'eligible to receive benefits' he must be willing to ac-

(

cept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual and customary in that occupation but which he may desire because of his particular needs or circumstances. Stated conversely, if he is unwilling to accept work in his usual occupation for the usual and customary number of days or hours, or under the usual and customary conditions at or under which the trade works, or if he restricts his offer or willingness to work to periods or conditions to fit his particular needs or circumstances, then he is not available for work within the meaning of the statute.'' Barclay White Co. (General Bldg. Contractors Ass'n, Intervener) v. Unemployment Compensation Board of Review, Department of Labor and Industry (Seifing, Intervener), 356 Pa. 43, 50 A. 2d 336; Harvey Edward Chambers v. Owens-Ames-Kimball Company et al., 146 Ohio St. 559, 67 N.E. 2d 439, 165 A.L.R. 1373.

In Unemployment Compensation Commission v. Bigger, 43 Del. 553, 53 Atl. 2d 761, the Court said:

''There is no need, for present purposes, to question the reasonableness or the validity of the union rule. In relationships between and among members, or in dealings between union and employer, its validity may be conceded. We are not now, however, considering a dispute of that nature. The question here is: Did the Legislature intend the Commission and the Court to give effect to union regulations in determining whether an individual has forfeited his right to receive benefits?

''It is necessary to keep in mind the basic purpose of the Law. This purpose is set forth in a preamble called 'Declaration of State Public Policy.' Economic instability due to unemployment is recognized as a serious menace to the welfare of the people, and involuntary unemployment is declared to be a matter of general concern requiring legislative action to protect the unemployed worker. The action taken to effectuate this purpose was the compulsory setting aside of an unemployment re-

serve to be used for the benefit of persons unemployed through no fault of their own.

"In the body of the Act, the Legislature has defined with some care the standards for determining who is entitled to benefits from the reserve fund created. Nothing in the Act suggests that a union or a group of employers or any one else may add to, or subtract from, the standards laid down in the Act itself."

 The appellant further contends that to affirm this decision would deny him of his valuable property rights without due process of law contrary to the due process and the equal protection clauses of the Constitution of the United States and the State of Mississippi. We are of the opinion that there is no merit in this contention.

It follows that the judgment of the court below is affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.