MISSISSIPPI EMPLOYMENT SECURITY COMMISSION *v.*
MIXON, et al.

No. 42849          January 4, 1964          159 So. 2d 180

*H. L. Hutcherson,* Jackson, for appellant.

*Gerald Adams,* Meridian, for appellees.

KYLE, J.

Four cases are involved in this appeal, which is an appeal by the Mississippi Employment Security Commission from judgments of the Circuit Court of Lauderdale County reversing the decisions and orders of the Board of Review of the Mississippi Employment Security Commission affirming the action of the Commission and the Referee in disqualifying two of the appellees from receiving unemployment compensation benefits for a period of three weeks and the other two for a period of four weeks, under the provisions of Section 5(d) of the Mississippi Employment Security Law, as amended by Laws of 1962, Ch. 564, Sec. 1 (Section 7379, Miss. Code of 1942 Rec.).

The four claimants, appellees on this appeal, are James T. Mixon, Emil J. Sodoma, Owen E. Tucker and

Raymond L. Tucker. Each of the appellees, all of whom were union electricians, after having been laid off from his former job and after having been unemployed for a period of two or three weeks, was offered employment or a referral by the employment office to employment, as an electrician at the Naval Auxilliary Air Station located approximately twenty miles from Meridian, at a wage of $3.52½ per hour for an eight-hour day, and for an expected duration of three to four weeks. Each of the appellees declined to accept the employment for reasons hereinafter stated and each of them was disqualified by the Commission from receiving employment compensation benefits under authority of Section 5(d) of the Law, which reads as follows:

"Section 5. An individual shall be disqualified for benefits —

" * * *

"(d) If the commission finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commission or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commission. Such disqualification shall continue for the week in which such failure occurred and for not more than the twelve (12) weeks which immediately follow such week as determined by the commission according to the circumstances in each case.

"(1) In determining whether or not any work is suitable for an individual, the commission shall consider among other factors the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

"(2) Notwithstanding any other provisions of this act, no work shall be deemed suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."

The record shows that each of the four claimants filed their claims for benefits under the Mississippi Employment Security Law during the latter part of September 1961. Claims were promptly investigated by a claims examiner, and the evidence with respect to each of the claims was promptly transmitted to the Commission. Upon the basis of that evidence the Commission determined that each of the claimants was disqualified for benefits under the law, and notice of such initial determination of the claimant's disqualification for benefits was given to each of the claimants, along with an explanation of the decision of the Commission, such explanation being in effect as follows: That the claimant had failed without good cause under the law to respond to a work notification, or to accept a suitable referral of the Employment office to Elbert Construction Company, Meridian, Mississippi; that the work involved was that of electrician with Elbert Construction Company, at a wage rate of $3.52½ per hour; that the work would have lasted from three to four weeks; that the wage rate was not substandard, and the work was not unsuitable for the claimant. The notice to Mixon also stated the following: "You explained that you could accept the referral only through the union busi-

ness agent. Such reason for your failure to respond to the work notification was without good cause under the Law. Therefore, your claim is disqualified.''

Upon receipt of the above mentioned notice of disqualification for benefits each of the claimants filed an application for a reconsideration of his claim by the Commission, assigning as identical reasons therefor the following:

"The wages were substantially less favorable, as I was offered $3.52½ per hour, and my normal wage rate is $3.60 per hour. In addition, for jobs on the Naval Base, where this job was located, I normally get $2.00 per day travel expense, which means I would have received 32½¢ per hour less wages from Elbert Construction Company.

"Elbert Construction Company does not have an agreement with the International Brotherhood of Electrical Workers. If he had, I would have received my normal wages. Also, under these conditions, if I had accepted employment with Elbert Construction Company, I would have had to resign from my Union.''

Upon reconsideration of the decisions theretofore rendered, the Commission in each case sustained its prior decision disqualifying the claimants for benefits for the reasons theretofore stated.

Upon receiving notice of the final order of the Commission sustaining its prior decision of disqualification for benefits, each of the claimants filed an appeal and asked for a hearing before the appeals referee. Separate hearings were allowed, and the testimony in each case has been made a part of the record on this appeal. There are minor differences in the facts developed in each of the four cases during the hearings before the appeals referee; but the minor differences in the factual situation developed during the separate hearings have no bearing on the questions presented for our decision on this appeal.

The evidence adduced on behalf of claimant Mixon and on behalf of the Commission during the hearing before the appeals referee may be treated as typical of the evidence adduced during the hearing of each of the other three cases. The testimony showed that the appellee Mixon was a member in good standing in the electricians' union; that he had last worked for Industrial Electric Company, at Columbus, Mississippi, as an electrician, with a rate of pay of $3.60 per hour; that he had been separated from work on September 20, 1961, because of lack of work and had returned to his home in Meridian where he filed his claim for unemployment benefits. The testimony showed that on October 12, 1961, Mixon was notified of available work for an electrician with Elbert Construction Company at the Naval Air Station, near Meridian, at $3.52½ per hour; but Mixon did not report for work for reasons alleged as follows: (1) That the wage specified for the job opening of which he was notified was substantially less favorable to him than the union wage or the prevailing wage of $3.60 per hour, with a travel allowance of $2.00 per day, making a difference of 32½¢ per hour, considering the expense allowance which the claimant normally would receive for the work involved; and (2) that, if the claimant had accepted the work, he would have lost his union status, since there was no agreement between the union and the employer.

The Referee found that the prevailing wage rate paid electricians at the Naval Air Station, where the work was located, was $3.52½ per hour; that the rate paid most electricians in the Meridian area generally was the union scale, but nonunion electricians in the area were paid rates ranging from $1.50 to $2.50 per hour; that the union scale in the area was $3.52½ per hour until about June 1, 1961, when it was raised to $3.60 per hour plus an expense allowance of $2.00 per day for work located beyond a certain distance from Meridian and

at the Naval Air Station. It was the opinion of the Referee that the fact that, if the claimant had applied for and accepted the available work, he would have lost his union status with certain advantages attendant thereon, did not furnish "good cause" for the claimant's failure to apply for and accept the available work, since no requirement that claimant resign from a labor union was imposed by either the agency or the employer as a condition of employment.

The Referee also found that while it appeared that the wage specified for the available work may have been less than the prevailing rate for similar work in the claimant's area generally at that time, it was the prevailing rate for work at the Naval Air Station where the work was located, and it was the rate which had prevailed and had been the union scale in the area until about June 1, 1961. It was the opinion of the Referee that the difference between the rate specified for the work and the rate established by the union scale was not so great as to constitute "good cause" for claimant's failure to apply for or to accept the work, when he then apparently had no definite prospect of other work; that the simple fact of the matter seemed to be that the claimant had refused to apply for available work in his customary occupation merely because the work was not under union contract, and he was unwilling to jeopardize his union status by accepting such work. The Referee concluded that the disqualification for benefits under Section 5(d) of the Law was in order under the facts developed at the hearing.

The claimant was notified of the decision of the appeals referee and immediately thereafter filed notice of an appeal from the decision of the Referee, and the matter was set for hearing before the Board of Review.

The Board of Review, after consideration of the appeal, adopted the findings of fact of the Referee. The Board was also of the opinion that the fact that, if the

claimant had applied for and accepted the work offered him he would have lost his union status with certain advantages attendant thereon, was not "good cause" under the facts disclosed by the record for his failure to apply for the work, since there was no requirement by either the agency or the employer that the claimant resign from a labor union as a condition of the employment, but that situation was created by the rule and/or practices of the union, which was not a party to the matter under consideration. The Board was also of the opinion that the wage specified for the job opening was not sufficiently less favorable to the claimant to constitute "good cause" for the claimant's failure to apply for or to accept the work, when he then apparently had no definite prospect for other work. The Board found that there was no issue involving the hours or other conditions of the work, and while it appeared that the wage specified for the available work may have been less than the prevailing wage for similar work in claimant's area generally at that time, it was the prevailing rate for work at the Naval Air Station where the work was located; that the simple fact seemed to be "that claimant refused to apply for available work in his customary occupation merely because the work was not under union contract, and he was unwilling to jeopardize his union status for such work." The decision of the Referee was therefore affirmed.

The findings and orders of the Appeals Referee and the Board of Review in the other three cases were substantially the same as in the Mixon case.

After the rendition of the Board's decision in each of the four cases the claimants filed their petitions in the Circuit Court of Lauderdale County for a judicial review of the decisions and orders of the Board of Review. Each of the petitioners alleged in his petition that, under the decision of the Board of Review, he would be required to give up his union membership and

forced to work for lower wages and under improper working conditions, that his union membership was a valuable right, and the decision of the Board "takes away such valuable rights;" and that the decision of the Board was arbitrary, capricious and contrary to the law.

The cases were consolidated for hearing by the circuit court by agreement of the parties and were heard at the April 1962 term of the court. The court found in each case that the differences in wages per hour for the work offered constituted wages "substantially less favorable", and that the decision of the Commission should be reversed. A judgment was therefore entered in each case reversing the order of the Board of Review and ordering that the Board of Review enter an order for payment of unemployment benefits to the claimant.

From the judgment entered by the circuit court in each of the four cases the Employment Security Commission has prosecuted an appeal to this Court.

The appellant has assigned and argued two main points as grounds for reversal of the judgment of the circuit court: (1) That the circuit court erred in its finding that the wages per hour for the work offered the appellees constituted wages "substantially less favorable" than the prevailing wage for similar work in the locality; and (2) that the circuit court erred in reversing the decisions of the Commission and the Board of Review disqualifying the appellees for employment benefits for certain weeks in each of the four cases, and ordering the Board of Review to enter an order for the payment of unemployment benefits to the claimants for the weeks for which they were disqualified by the Commission.

We think the circuit court erred in its finding that the difference in wages per hour for work available at the Naval Air Station constituted wages "substantially less favorable" to the claimants than those prevailing for similar work in the locality, and in reversing

the decision and order of the Board of Review and ordering the Board to enter an order for the payment of unemployment benefits to the claimants.

Section 4(i) of the Law (Ch. 533, Laws of 1958, Sec. 7388, Code of 1942, Rec.), provides that: "* * * In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law * * *."

██ ██ After a careful examination of the evidence in each of the four cases, we think the findings of the Appeals Referee and the Board of Review as to the facts were supported by the evidence. There was no charge of fraud, and those findings, in our opinion, should have been accepted as conclusive by the circuit court on appeal. Mississippi Unemployment Compensation Commission et al. v. Avent (1941), 192 Miss. 85, 4 So. 2d 296; Mississippi Employment Security Commission v. Wilks (Miss. 1963), 156 So. 2d 583. We also think that the Commission, the Referee and the Board of Review applied correctly the provisions of the statute relating to the disqualification for benefits of individuals who have failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the Commission, or to accept suitable work when offered them.

In the case of Mills v. Mississippi Employment Security Commission (1956), 228 Miss. 789, 89 So. 2d 727, 56 A.L.R. 2d 1010, this Court held that, under the Mississippi Employment Security Law, in order to claim unemployment benefits, the unemployment must be involuntary, and benefits must be used for persons unemployed through no fault of their own; that the law makes no distinction between union and nonunion members as they are both protected in their rights as to union membership; and that under the law making an

unemployed individual eligible for benefits only if he is "available for work", a union member who refused to work for less than the union scale fixed by a contract duly negotiated through collective bargaining was not available for work and was not entitled to benefits.

The evidence in the record that we have before us shows that the wage offered the appellees in October 1961 for work at the Naval Air Station, some 15 or 20 miles from the City of Meridian, was $3.52½ per hour, which was the prevailing rate paid to electricians for work at the Naval Air Station at the time the jobs were started. The evidence shows that on or about June 1, 1961, the union raised its rate to $3.60 per hour in the vicinity of Meridian, plus an additional $2.00 per day travel allowance for work at the Naval Base; but the contractors at the Naval Base did not put the new rate into effect until the jobs then in progress were completed; and according to the testimony of Henry C. Flanaghan, a representative of the Employment Office, the wage rate of $3.52½ per hour was still the prevailing rate paid to electricians at the Naval Air Station when the appellees were offered work at the Air Station on October 12, 1961.

It thus appears that the wage of $3.52½ per hour offered to the appellees for work at the Naval Air Station was 7½¢ per hour below the new union wage scale for the Meridian area generally, and after adding the 25¢ per hour travel pay established by the new union scale for work at the Naval Base, the wage offered was 32½¢ per hour below the new union wage scale and travel pay. But the wage offered for the available work was the prevailing wage for such work at the Naval Air Station where the work was located, and in our opinion it cannot be said that the wage offered to the appellees was "substantially less favorable" to the appellees than the prevailing wage for similar work in the locality.

As to the contention made by each of the appellees in their petition for judicial review "that, under the decision of the Board of Review, he will be required to give up his union membership and forced to work for lower wages", that contention, in our opinion, has been definitely answered by this Court in the opinion rendered in Mills v. Mississippi Employment Security Commission, supra. As stated by the Board of Review, there was no requirement by either the agency or the employer that the claimant in any of these cases resign from a labor union as a condition of the employment.

As stated above, we think the findings of fact and the conclusions of law set forth in the decisions and orders of the Referee and the Board of Review were fully supported by the evidence; and we think the trial court erred in reversing the findings and the orders of the Board of Review. The judgment of the lower court in each of the four cases is therefore reversed, and judgment will be entered here reinstating and affirming the decisions and orders of the Board of Review.

Reversed and judgment rendered in favor of the appellant.

*McGehee, C. J., and Ethridge, Rodgers and Jones, JJ.,* concur.