THORNBROUGH, COMMISSIONER *v.* STEWART.

5-2096                                              334 S. W. 2d 699

Opinion delivered April 18, 1960.

*Luke Arnett,* and *Lowell D. Gibbons,* for appellant.

No brief filed for appellee.

PAUL WARD, Associate Justice. Appellee, Earl H. Stewart, was employed by Ben Pearson, Inc. for approximately eleven months in 1956 where he received $1.05 an hour as a nonunion laborer. He was then employed for several months by the International Paper Company at Pine Bluff, where, as a member of a labor union, he performed common labor for $1.50 per hour. Appellee was laid off from work by the Paper Company on June 13, 1958. Appellee then registered for work at the Employment Security Local Office, by which office he was referred to his former employer, Ben Pearson, Inc., where employment was offered to him as a truck driver at $1.05 per hour for the duration of the job.

Appellee refused to accept employment with Ben Pearson, Inc. on the terms above stated. The reason appellee refused to accept employment was, as he con-

tends, because the rules of the labor union to which he belonged subjected him to a fine and possible discharge from the union for accepting a job paying less than the union scale.

The Local Office disqualified appellee pursuant to Section 5 (c) of the Employment Security Act (§ 81-1106 of Ark. Stats.) for failing without good cause to accept "available suitable work when so directed by the Employment Office". The Appeal Section and the Board of Review affirmed the disqualification by the Local Office, also holding claimant ineligible pursuant to Section 4 (c) of the Employment Security Act (§ 81-1105 of Ark. Stats.) on the grounds that appellee had not done "those things a reasonable, prudent individual would be expected to do to secure work" and was, therefore, "not available for such work". The Circuit Court, upon appeal to it, reversed the decision of the Board of Review on the ground that Section 5 (c)(2)(c) of the Employment Security Act (§ 81-1106 (c)(2)(c) of Ark. Stats.) made the work at Ben Pearson, Inc. unsuitable. Apparently the Circuit Court's decision was based on the belief that to require appellee to accept employment with Ben Pearson, Inc. at wages less than union scales amounted to requiring appellee to resign from his labor union. From the above decision of the Circuit Court, C. P. Thornbrough, Commissioner of Labor, has prosecuted this appeal.

The pertinent facts in this case are not in dispute. Appellee lost his job with the International Paper Company without blame on his part. He was, for all purposes of this opinion, entitled to receive benefit payments under the Employment Security Act UNLESS he forfeited his right to receive such payments by refusing to accept employment with Ben Pearson, Inc.

Whether or not appellee did forfeit his right to benefit payments presents a question of law involving the interpretation of a portion of the Act heretofore mentioned. The portions of said Act with which we are here concerned are found in Ark. Stats. § 81-1106. Under Subsection (c) [in the Supplement] of the above Sec-

tion appellee became disqualified to receive payments if he "failed without good cause to . . . accept available suitable work" when it was offered to him. It is not denied here by appellee that suitable work was offered to him except for one thing, that is, he would be subjected to the possibility of being fined or discharged by his union if he accepted work for less than union wages. It was, therefore, contended by appellee that he had good cause to refuse the job and that he was protected (from disqualification) by Subsection (c)(2)(c) of said Ark. Stats. § 81-1106 which reads: ". . . if as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any *bona fide* labor organization".

The trial court held, in effect, that the threat to appellee of being fined or discharged by his union amounted to requiring him to resign from his union. In so holding we think the trial court fell into error. It is true that the trial court had no precedent laid down by this Court by which to be governed in reaching its decision, but we find the question has been uniformly resolved adversely to appellee's contention by numerous decisions of other jurisdictions.

A similar factual situation under essentially the same statute with which we are here concerned was resolved as above indicated by the Supreme Court of Ohio in *Chambers* v. *Owens-Ames-Kimball Co., et al,* 146 Ohio 559, 67 N. E. 2d 439, 165 A. L. R. 1373. In that case the Court, in answer to the same contention here made by appellee, among other things, said:

". . . the interpretation of appellee would make the operative effect of a refusal to work depend entirely upon the whim or caprice of an organization to which the applicant for unemployment compensation might belong. It is within the range of possibility that a labor organization might adopt a rule that no member could work where negroes are employed, or where the employment calls for more than four hours as a day's work, or where the place of business of an employer is more than a mile from the residence of the unemployed member,

or where an employer fails to maintain certain facilities relating to the conditions of employment, even though not required by law so to do, or where an employer does not pay a wage equal to the union wage for the same kind of work.

Under such an interpretation, the right of the applicant for unemployment compensation would not be fixed or determined by the provisions of the statute but by rules adopted by organizations in which the applicant has membership. Such interpretation of the statute, and as a consequence its administration in conformity to such interpretation, is clearly untenable.

Under appellee's interpretation of the statute, an unemployed nonunion workman would be obliged to accept the same job which the appellee refused to accept and would be required to work without right to participate in the unemployment compensation benefits.''

We have set out the above quotations for the reason that they set forth the basis upon which the Court made its determination, and because we think the reasoning set forth therein is sound and convincing.

Our research reveals that the conclusion and the reasoning in the *Chambers* case, *supra,* appears to be universally adopted in other jurisdictions. Among such decisions we call attention to the following: *Paulee Mills* v. *Mississippi Employment Security Commission,* 228 Miss. 789, 89 So. 2d 727, 56 A. L. R. 2d 1010; *Bigger* v. *Unemployment Compensation Commission,* 4 Terry 553, 43 Del. 553, 53 A. 2d 761; *Barclay White Company* v. *Unemployment Compensation Board of Review, Department of Labor and Industry,* 159 Pa. Super. 94, 46 A. 2d 598; *Dwyer* v. *Appeal Board of Michigan Unemployment Compensation Commission, et al,* 321 Mich. 178, 32 N. W. 2d 434; and *Unemployment Compensation Commission* v. *Tomko, et al,* 192 Va. 463, 65 S. E. 2d 524, 25 A. L. R. 2d 1071.

It is our conclusion, therefore, based on the foregoing, that the judgment of the trial court must be, and

it is hereby, reversed and the cause of action is dismissed.

Reversed and dismissed.