304 So.2d 487 (1974)
The AUCHTER COMPANY, a Corporation, Petitioner,
v.
FLORIDA DEPARTMENT OF COMMERCE, INDUSTRIAL RELATIONS COMMISSION et al., Respondents.
No. V-432.
District Court of Appeal of Florida, First District.
December 10, 1974.
Rehearing Denied February 7, 1975.
Marion D. Lamb, Jr., J. Lewis Hall, Tallahassee, Robert C. Lanquist and William H. Andrews, Hamilton & Bowden, Jacksonville, for petitioner.
Jesse J. McCrary, Jr., North Miami, for respondents.
McCORD, Judge.
This is a petition for writ of certiorari to review an order of the Industrial Relations Commission, Florida Department of Commerce, awarding unemployment compensation benefits to respondents, J.H. Adams and John B. Dailey. Adams and Dailey's claims were heard and denied by the Claims Examiner upon a determination by the Examiner that each had disqualified himself from receiving benefits because he had failed without good cause to accept an offer of available suitable work. Both claimants appealed and the appeals referee determined that since the claimants had materially reduced their chances for securing employment because of self-imposed restrictions, they could not be considered to have been available for work as required by law. The self-imposed restrictions referred to by the referee were that the claimants were union members and had refused to accept a non-union job The appeals referee's decision was then appealed to the Industrial Relations Commission and that Commission, in a 2 to 1 decision (majority opinion by Chairman Stephen M. Slepin; specially concurring opinion by Commissioner Leonar A. Carson; and dissenting opinion by Commissioner Burnis T. Coleman) reversed and declared both claimants eligible to receive unemployment compensation.
The facts are essentially the same as to both claimants. On their application for unemployment benefits, they state the reason for such unemployment was lack of work or that their last job was finished. At the hearings before the appeals referee, the claimants testified that they were carpenters and members of Carpenters Local 627; that since there was no union work available, they applied for non-union jobs on September 5, 1973, in Orange Park, Florida. They were offered immediate employment at $7.00 per hour. Union wages are $6.65 per hour, plus $.91 for union benefits. The record shows that the average wage scale for carpenters in that *488 area is $3.62 per hour, with the low being $1.70 per hour and the high being $6.00 per hour, based on the Florida State Employment Survey of non-union work. The reason given by claimants for not taking the job was that it was against union rules to work at a non-union job that paid less than union scale.
The question presented is whether or not a claimant member of a labor union is "able to work and is available for work" as required by Section 443.05(3), Florida Statutes, when he refuses to accept available work of the type he normally performs because it is on a non-union job and whether or not such a claimant "has failed without good cause ... to accept suitable work when offered to him" within the meaning of Section 443.06(2), Florida Statutes. The Commission majority found that acceptance of non-union work would result in the claimants receiving a wage of less than the union scale, their being subjected to union discipline, and their being deprived of union benefits which inure to their advantage in terms of retirement and medical benefits; that as a condition of accepting the non-union employment, the claimants would have been required not necessarily to "resign" from their union but they would have been fined by their union. The Commission further found that the claimants could not have been expected to have sacrificed money (and a union fee) and status with their certified union in order to have accepted unemployment compensation benefits to which they were otherwise entitled by the law of the state and which must be consonant with the National Labor Relations policy of this country. Commissioner Carson, as expressed in his concurring opinion, was of the view that claimants had good cause for not accepting the tendered employment in that it would not have been as advantageous to them as union employment would have been.
The statute which was before the Commission and is before us for construction under the facts of this case is § 443.06(2)(b), Florida Statutes.
"Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:
(1) If the position offered is vacant due directly to a strike, lockout, or other labor dispute;
(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.
(3) If as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."
Subparagraph (1) above is completely inapplicable to this factual situation. As to Subparagraph (2), there is no contention that the hours are unfavorable and (in spite of the majority commission finding) the wages obviously are not substantially less favorable than those prevailing for similar work in the locality. The $7.00 per hour wage offered is not substantially less favorable to the claimant than the $6.65 per hour union wage plus $.91 for union benefits. The primary proposition respondents are concerned with is that the work offered was non-union work. This, however, was not a condition of the employment. The employment was open to any carpenter (union or non-union) with the qualifications of claimants.
As to Subparagraph (3), there was no condition of the employment that claimants would be required to resign from or refrain from joining any bona fide labor organization. They, of course, were members of a union but they could have worked at this employment without any requirement *489 that they resign from union membership.
Respondents argue that these claimants should not be forced to jeopardize rights acquired through years of union membership as a condition of qualification for unemployment benefits and that such result was not intended by the liberality of Chapter 443, Florida Statutes, and should not be allowed by Article I, Section 6, of the Florida Constitution. The record does not show what union rights, if any, respondent claimants would have jeopardized had they taken the non-union work. In this connection, Commissioner Coleman in his dissenting opinion stated as follows:
"While discussing history, this Commissioner would point out that he was the first appeals referee for unemployment compensation benefits claims appeals in this state, beginning in 1939 and thereafter, commencing in 1941, served as general counsel for what was then the Florida Industrial Commission and continued to so serve until the end of 1963. During such period there were many occasions when the same contention was made by union members as is made in the case sub judice, i.e., that if a union member accepted nonunion work he would be subject to disciplinary action. In the course of the history of this Commissioner, in hearing appeals, some of which involved this contention and in representing The Florida Industrial Commission and the Board of Review (which was the Florida Industrial Commission) he has no recollection of any instance when any evidence was ever submitted or incorporated in any case record wherein any such disciplinary action had ever been imposed upon any union members for accepting suitable work solely because it was with a nonunion employer. It is therefore submitted that this contention is a "bug-a-boo" advocated for the purpose of being free to decline nonunion employment without loss of the right to receive unemployment benefits. While laudable and desirable from the union standpoint, it is clearly a contention for an unconstitutional interpretation of the Unemployment Compensation Law."
If we assume that the union would have imposed sanctions upon claimants, such would have been an action taken by the union and not an action of the employer or the State of Florida. Respondents contend that the union has the judicially recognized right to adopt rules and regulations governing its members and the denial of unemployment compensation interferes with that right. We do not dispute the union's right to adopt legal rules or impose sanctions upon its members for violations of its rules. It, of course, has the right to adopt but it is not required to adopt a rule that will have the effect of denying to a member benefits to which he would otherwise be entitled to receive under the law When the union does so, it is the union and not the prospective employer or the State of Florida which declares the work to be unsuitable and thereby forecloses the member's right to unemployment compensation if he chooses not to accept the union sanctions.
Paragraph (a) of Subsection (2) of Section 443.06, Florida Statutes, provides as follows:
"In determining whether or not any work is suitable for an individual, the division shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."
Nowhere in this statute does it say or can it be inferred that the Division shall consider whether or not the acceptance of the employment will cause the union of which the claimant is a member to impose sanctions upon him.
Respondents' argument, while new to the courts of Florida, is not new to respondent *490 Commission according to the dissenting opinion of Commissioner Coleman. In addition to the above quoted portion of his opinion, he stated as follows:
"... the Chairman's opinion stating that this is a case of first impression in this state overlooks the prior case of Thomas L. Cartwright v. Florida Department of Commerce, I.R.C., in re Carbone, Inc. reported at [Fla.App.,] 247 So.2d 804. The same was a case filed by the union claimant petitioner, Cartwright, in the Third District Court of Appeal, Case No. 71-109, which was thereafter dismissed by the Court upon the motion of the petitioner, after the filing of brief by counsel for the Department of Commerce and the Industrial Relations Commission defending a decision of the Industrial Relations Commission which was contradictory to the decision herein as written by the Chairman of this Commission and partially concurred in by my fellow member, Mr. Carson."
Respondents' contentions are also not new to courts of a number of other states. The Supreme Court of Idaho in Norman v. Employment Security Agency, 83 Idaho 1, 356 P.2d 913, construed an Idaho statute identical with Subparagraph (3) of Paragraph (b) of Subsection (2) of Section 443.06, Florida Statutes, (quoted above) in a factual situation similar to that presented in the case sub judice. There, a union journeyman plumber was laid off due to lack of work, and he applied for and was offered a job by a non-union company. Before accepting the job, he told the company that he would have to first discuss the matter with his union representative. After talking with the union representative, he told the prospective employer he could not accept a job which paid any less than the union scale and if he accepted the job on the terms offered, he would jeopardize his union membership. In presenting his claim, he relied upon a portion of the Idaho statute concerning unsuitability of work which is identical with the Florida statute above referred to. He felt that since there might be some retribution against him by the union if he accepted the job, he could not accept it. The court held the statutory provision had application only to conditions imposed by the prospective employer and that it was not applicable to conditions imposed by the prospective employee or his labor union. In discussing the statute it said:
"It is claimant's position that since his union would have expelled him from membership had he accepted the job proposed by Behrends, the employment offered was, for that reason, not suitable employment. The condition of unsuitability here involved was not one imposed by the prospective employer, but was imposed upon the claimant by his union. The statutory provision above quoted, has application only to conditions imposed by the prospective employer, and is not applicable to conditions imposed by the prospective employee or his labor union. As pointed out by counsel for the agency, the fallacy of claimant's position is demonstrated when the rule of suitability is applied to a nonunion claimant. If a nonunion plumber had failed to apply for or accept the employment offered there could be no doubt that he would be ineligible for benefits. If claimant's contention prevailed, the offered employment would be unsuitable for a union member, but suitable for nonunion worker. So applied the statute would discriminate against nonunion workers. Such discrimination would render the statute of questionable constitutionality."
A number of courts of other states which have been called upon to decide this same question of statutory construction have reached the same conclusion as the Idaho court. See Barclay White Co. v. Unemployment Compensation Board of Review, 356 Pa. 43, 50 A.2d 336, cert. den., 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 347; Chambers v. Owens-Ames-Kimball Co., 146 Ohio St. 559, 67 N.E.2d 439; Mississippi Employment Security Commission v. Mixon, 248 *491 Miss. 399, 159 So.2d 181; Thornbrough v. Stewart, 232 Ark. 53, 334 S.W.2d 699; Miville v. Maine Employment Security Comm., Me., 219 A.2d 752; Bigger v. Unemployment Comp. Comm., 43 Del. 553, 53 A.2d 761; Lemelin v. Administrator, Unemployment Comp. Act, 27 Conn.Sup. 446, 242 A.2d 786. Also, see Annotation, 56 A.L.R.2d 1015 "Right to unemployment compensation of claimant who refuses nonunion employment" where it is stated:
"It seems well established that an unemployment compensation claimant who has refused offered employment on the ground that it is `nonunion' (its `nonunion' character springing from reasons other than the fact that the offering employer is involved in a labor dispute) is barred from the benefits which the compensation statutes afford."
The Supreme Court of Pennsylvania in Barclay White Co. v. Unemploy. Comp. Bd. of Rev., supra, stated the following in its determination of this question:
"It immediately appears from a reading of § 402(a), with the declaration set forth in Art. I, § 3, in mind, that it would be an absurdity to say that it was the intent to give an unemployed person `good cause' to refuse acceptance of `suitable work,' and, therefore, to make him eligible for compensation, because of some contract he voluntarily entered into outside of his employment which, in his opinion, may prove more advantageous to him financially. By what stretch of the imagination could it be said that such a person is involuntarily unemployed? Claimant entered into membership in his union of his own volition because he felt that his best financial interests would be served thereby. His union had adopted by-laws prohibiting its members from working at less than a rate established by it, with non-union members, and on non-union jobs, under penalty of fine, suspension or expulsion. If claimant desires to retain his membership, he is bound by those by-laws, for as between himself and the union such by-laws are not unreasonable, and they are quite efficacious in achieving union unity, so essential to the attainment of its objectives. No one can properly question the fact that a worker who joins a union and abides by its lawful rules, regulations and by-laws is within his legal rights. However, when such union member is unemployed because he refuses to accept a referral (at wages less than those established by the union, although not less than those prevailing for similar work in his community), rather than be fined, suspended or expelled from membership by the union, he is not involuntarily unemployed, but rather out of work through his own choosing. There is no compulsion on him to retain his membership in the union, and, therefore, the statute excludes him from its benefits when he refuses to accept `suitable work.' The public policy of the Commonwealth does encourage membership in labor organizations but retention of membership therein is not a surrender to circumstances of the kind and quality which will turn voluntary unemployment into involuntary unemployment. It would do great violence to the clear and unequivocal wording of the statute to hold that a labor or any other organization can control payments of unemployment benefits to its members by merely forbidding them to work at wages less than those set by it, or with certain persons, or at certain places, or under certain conditions. If eligibility under such conditions is to be added to the Act, that must be done by the Legislature, and not the Courts."
Respondent claimants, in their brief, and Chairman Slepin, in his opinion, have cited one case which holds that employment is not suitable if by accepting it the claimant would jeopardize his union rights. This is an opinion of the Supreme Court, Appellate Division, Third Department of the State of New York  In Re Grandin's Claim, 19 A.D.2d 448, 243 N.Y.S.2d 902. There the New York court construed a *492 New York statute, which is to some extent at variance with the Florida Statute. The New York statute provides:
"No refusal to accept employment shall be deemed without good cause nor shall it disqualify any claimant otherwise eligible to receive benefits if (a) acceptance of such employment would either require the claimant to join a company union or would interfere with his joining or retaining membership in any labor organization".
The court held that although there was no evidence that acceptance of the job offer would have interfered with the claimant's retention of membership in his union, it was clearly inferable that such might lead to loss of benefits if not of membership and the court remanded the case to the Industrial Commission for further proof on that point should any party on remand apply for further hearing. There is no discussion of the statute in the court's opinion and little reason is given in support of the construction applied. We prefer the construction placed on the identical or closely similar statutes by the various courts in the above cited cases. Such appears to be the overwhelming weight of authority in the country.
Respondent claimants find solace for their contention in Nash v. Florida Industrial Com., 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438, and Chairman Slepin in his opinion cited that case as supportive of the proposition stated by him that "one cannot deny to a citizen of Florida his entitlement to unemployment compensation benefits simply because he exercises his protected rights." In Nash, the Florida Industrial Commission (predecessor of the present commission) in construing that part of the Florida statute which disqualifies a person from receiving unemployment compensation when the unemployment was due to a labor dispute, ruled that an unemployed person was not entitled to continue receiving compensation after filing an unfair labor practice charge with the National Labor Relations Board against her former employer. Our sister court, the District Court of Appeal, Third District, denied certiorari. On certiorari to the United States Supreme Court it reversed stating as follows:
"We have no doubt that coercive actions which the [National Labor Relations] Act forbids employers and unions to take against persons making charges are likewise prohibited to be taken by the states. The action of Florida here, like the coercive actions which employers and unions are forbidden to engage in, has a direct tendency to frustrate the purpose of Congress to leave people free to make charges of unfair labor practices to the Board. Florida has applied its Unemployment Compensation Law so that an employee who believes he has been wrongly discharged has two choices; (1) he may keep quiet and receive unemployment compensation until he finds a new job or (2) he may file an unfair labor practice charge, thus under Florida procedure surrendering his right to unemployment compensation, and risk of financial ruin if the litigation is protracted ... Florida should not be permitted to defeat or handicap a valid national objective by threatening to withdraw state benefits from persons simply because they cooperate with the government's constitutional plan."
This ruling of the U.S. Supreme Court is in no way analogous to the case sub judice. In Nash the effect of the Florida statute as applied by the Florida court was to thwart the prosecution of an action before the National Labor Relations Board, the right to bring such action having been granted by the National Labor Relations Act. In the case sub judice, if any rights of respondent claimants are enfringed, the only infringement will occur from union action after they accept the job. No rights granted to respondent claimants under the National Labor Relations Act will be infringed by the denial of compensation under the facts of this case.
*493 Respondent claimants also cite Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (which is also cited in Chairman Slepin's opinion) as analogous to the case sub judice. In Sherbert, appellant, a member of the Seventh Day Adventist Church, was discharged by her South Carolina employer because she would not work on Saturday, the Sabbath Day of her faith. She was unable to obtain other employment because she would not work on Saturday and she filed a claim for unemployment compensation benefits under the South Carolina Unemployment Compensation Act which provides (as does the Florida statute) that a claimant is ineligible for benefits if he has failed, without good cause, to accept available suitable work when offered to him. The state commission denied appellant's application on the ground that she would not accept suitable work when offered and the South Carolina Supreme Court affirmed. The United States Supreme Court held that the South Carolina statute, as applied to appellant, abridged her right to free exercise of her religion in violation of the First Amendment, made applicable to the states by the Fourteenth Amendment. The case sub judice, of course, does not involve an abridgement of the free exercise of religion guaranteed by the First and Fourteenth Amendments.
Petitioner also contends that it was denied due process in that it was not given notice of these proceedings as required by statute during the trial stage and, therefore, did not have an opportunity to participate in the presentation of evidence. In view of our ruling here made, that question is moot.
Certiorari is granted and the order of the Industrial Relations Commission directing that unemployment benefits be paid to J.H. Adams and John B. Dailey is quashed.
RAWLS, C.J., and JOHNSON, J., concur.