WENTZ HEATING & AIR CONDITIONING CO., EMPLOYER-
APPELLANT, v. KENNETH D. KIENE, CLAIMANT-APPELLEE,
AND GERALD E. CHIZEK, COMMISSIONER OF LABOR OF
THE STATE OF NEBRASKA, APPELLEE.

274 N. W. 2d 547

Filed January 24, 1979. No. 42079.

William D. Sutter of Mattson, Ricketts, Davies,
Stewart & Calkins, for appellant.

Gerald E. Chizek, Commissioner of Labor, James
R. Jones, and John W. Wynkoop, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH,
McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and
RIST, District Judge.

RIST, District Judge.
This is an appeal from the action of the Nebraska
Department of Labor Appeal Tribunal, affirmed by
the District Court for Lancaster County, Nebraska,
finding appellee, Kenneth D. Kiene, eligible for un-
employment compensation benefits.
Appellee Kiene is a sheet metal worker, a member
of Sheet Metal Workers International Association,
Local 541, and was employed by the appellant,

Wentz Heating & Air Conditioning Co., (hereinafter called Wentz), prior to January 14, 1977. In 1975, appellee's union entered into a collective bargaining agreement with the Sheet Metal & Air Conditioning Contractors' National Association (SMACNA, Lincoln Chapter, Inc.). Wentz is a member of SMACNA. The agreement was in effect at the times material herein.

On January 14, 1977, Kiene was laid off by Wentz and shortly thereafter applied for and received unemployment compensation benefits which were charged to Wentz' experience account with the Commissioner of Labor.

On June 23, 1977, Wentz desired to reemploy Kiene and made a written offer of such employment to both Kiene and his union. Kiene, after consultation with the union, advised Wentz that he was 27th on the union's out-of-work list and would not be available for work until his name came up on that list. This was confirmed by the union who sent another union member having priority on the list to accept the job offer from Wentz and Wentz hired this member.

Wentz then protested the continued payment of unemployment compensation benefits to Kiene. The protest was denied by the Nebraska Department of Labor Appeal Tribunal which found Kiene eligible for such continued benefits. This determination was affirmed by the District Court.

Appellant appealed to this court. The Commissioner of Labor, State of Nebraska, is also an appellee and appeared in support of the trial court's decision.

This matter is considered on appeal pursuant to section 48-640, R. R. S. 1943.

The applicable statute involved in the determination of this case is section 48-628, R. R. S. 1943, which provides in part: "An individual shall be disqualified for benefits: * * * (c) For any week of unem-

ployment in which he has failed, without good cause, * * * to accept suitable work when offered him, * * * no work shall be deemed suitable and benefits shall not be denied * * * to any otherwise eligible individual for refusing to accept new work under any of the following conditions: * * * (iii) if, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.''

The basic issue to be decided is whether Kiene could refuse to accept the employment offer from Wentz because of the union work list rule and still be eligible for unemployment compensation benefits.

We first examine the collective bargaining agreement and the evidence with respect to it to determine whether Wentz agreed to or took any action with respect to the work list practice of the union such as might estop or prohibit it from challenging the continued payment of benefits. The only provision of the agreement having any bearing on this issue is Article IV which provides: ''The Union agrees to furnish upon request by the Employer, duly qualified journeyman and apprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.''

No provisions appear in the agreement with respect to the manner in which the union is to select the workers. In particular, there is no provision for the use by the union of a work list in determining which workers are to be furnished to the employer. The evidence reflects this is the first time in at least 11 years that an employer who requested a specific worker was refused that request because of a union work list. It does reflect the testimony of the union representative that the union had had a work list for some years, but no evidence that Wentz had any knowledge of it or had agreed or acquiesced in its

use in the selection of workers. Moreover, the uncontradicted testimony of the president of Wentz was that traditionally it had been able to hire the specific workers it requested. We find nothing in either the collective bargaining agreement or in the acts and conduct of the employer and the union to justify a finding that the union's work list rule was the hiring practice agreed to by both parties, especially with respect to an employer's request for a specific worker. There is nothing in either the agreement or the conduct of the employer and the union which would estop or prohibit the employer from raising the question of Kiene's right to subsequent unemployment benefits.

We next consider whether the provisions of section 48-628, R. R. S. 1943, cited in part above, would, on the evidence, disqualify Kiene from benefits or whether there was a statutory justification for the refusal of the job offer.

It is appellee's position that if Kiene had accepted the work offer from Wentz, it would have violated the rules of his union and have an adverse impact upon his union membership. It is asserted he comes within the spirit if not the letter of the statutory proviso that work is not suitable if as a condition of it he would have to resign from or refrain from joining any bona fide labor organization.

The record is silent as to what sanctions, if any, the union would have imposed upon Kiene had he accepted the offer of employment, and there is no factual basis for saying that he would have had to resign from the union or otherwise lose his union membership.

Assuming, however, that Kiene would lose his union membership if he accepted the job offer, it is our conclusion his refusal would still bar him from receiving unemployment compensation benefits. In reaching this conclusion it must be remembered that we are not here involved with Kiene's right to

union membership. There is no question but what he has that right. We are concerned only with his right to unemployment compensation benefits.

We construe the limitations of section 48-628 (c) (2) (iii), R. R. S. 1943, to refer to conditions attached to the job offer by the employer and not to possible consequences arising by virtue of union obligations and restrictions assumed by Kiene when he chose to become a union member and existing separate and apart from any action or agreement by the employer.

Here the possibility of union sanction or loss of membership would exist as a result of union rules adopted solely by it and not by any action or restriction imposed by the employer. The right to unemployment compensation is defined and conditioned by statute and no party to the employment process may unilaterally attach other and different conditions to it. We conclude therefore that Kiene's refusal of the job offer does not bring him within the statutory exceptions and that he refused suitable work without good cause, thereby disqualifying him from unemployment compensation benefits.

This is a case of first impression in Nebraska, and while there is a division of authority in other jurisdictions with respect to the effect of union rules, we believe the more logical view, and it appears to be the majority view, is as we have stated it above.

In those jurisdictions which have passed upon issues of similar import we note the following reasoning with approval: In a case where a union member refused employment because to do so would violate a union rule and subject him to sanctions, and was therefore denied unemployment compensation under a statute substantially similar to that of Nebraska, the Ohio court held: "the interpretation of [the claimant worker] would make the operative effect of a refusal to work depend entirely upon the whim or caprice of an organization to which the applicant for unemployment compensation might belong * * *

Under such an interpretation, the right of the applicant for unemployment compensation would not be fixed or determined by the provisions of the statute but by rules adopted by organizations in which the applicant has membership. Such interpretation of the statute, and as a consequence its administration in conformity to such interpretation, is clearly untenable.'' Chambers v. Owens-A.-K. Co., 146 Ohio St. 559, 67 N. E. 2d 439.

The Pennsylvania court in like circumstances held: ''We think it pertinent to say here that we are in no way interfering with the practice and procedure of collective bargaining or with a worker's full freedom of association with his fellows in a labor or other lawful organization. Such considerations have no place here. We are called upon to decide merely whether or not under the facts presented claimant is eligible for compensation under the Unemployment Compensation Law. * * * it would be an absurdity to say that it was the intent to give an unemployed person 'good cause' to refuse acceptance of 'suitable work', and, therefore, to make him eligible for compensation, because of some contract he voluntarily entered into outside of his employment which, in his opinion, may prove more advantageous to him financially. * * * Claimant entered into membership in his union *of his own volition* because he felt that his best financial interests would be served thereby. His union had adopted by-laws [prohibiting its members from accepting work under certain circumstances] under penalty of fine, suspension or expulsion. If claimant desires to retain his membership, he is bound by those by-laws, for as between himself and the union such by-laws are not unreasonable, * * * However, when such union member is unemployed because he refuses to accept [work in violation of the bylaws] he is not *involuntarily* unemployed but rather out of work through his own choosing. * * * retention of

[union] membership therein is not a surrender to circumstances of the kind and quality which will turn voluntary unemployment into involuntary unemployment. It would do great violence to the clear and unequivocal wording of the statute to hold that a labor or any other organization can control payments of unemployment benefits to its members by merely forbidding them to work * * * with certain persons, or at certain places, or under certain conditions. * * *." Barclay White Co. v. Unemp. Comp. Bd., 356 Pa. 43, 50 A. 2d 336.

In a similar vein the Delaware Court held: "The question here is: Did the Legislature intend the Commission and the Court to give effect to union regulations in determining whether an individual has forfeited his right to receive benefits? * * * it is clear that the Legislature had no thought of strengthening or weakening the power of unions. Its purpose was to protect *all* workmen involuntarily unemployed. Membership in a union gives an individual no greater rights under the Act than he otherwise has. Likewise a group of individuals cannot secure higher privileges merely by adopting a rule which binds themselves to a certain course of conduct. We cannot agree with a theory which would have the effect of substituting a union rule for a statutory requirement." (Emphasis supplied.) Bigger v. Unemp. Comp. Comm., 43 Del. 553, 53 A. 2d 761.

In Florida, that court held: "Respondents contend that the union has the judicially recognized right to adopt rules and regulations governing its members and the denial of unemployment compensation [where work was refused because of those rules] interferes with that right. We do not dispute the union's right to adopt legal rules or impose sanctions upon its members for violations of its rules. It, of course, has the right to adopt but it is not required to adopt a rule that will have the effect of denying to a member benefits to

which he would otherwise be entitled to receive under the law. When the union does so, it is the union and not the prospective employer or the State * * * which declares the work to be unsuitable and thereby forecloses the member's right to unemployment compensation if he chooses not to accept the union sanctions." Auchter Co. v. Florida Dept. of Com., Indus. Rel. Com'n, 304 So. 2d 487 (Fla. App.).

Finally, we note the obvious unfairness that would result if appellee's position were sustained. First, it would mean that a union laborer would have preferred status over a nonunion laborer because the latter would have to accept the job offer or be denied unemployment compensation while the former could refuse the offer and yet receive such benefits. Second, it would mean that the employer, as in this case, would have to hire and pay a new employee and also be charged for unemployment benefits to the worker to whom he had offered the job and who refused it. We are satisfied the Legislature did not intend either result under the statute.

We believe the trial court was in error in suggesting this situation is solely between the employer and the union because they have a collective bargaining agreement. This case involves the rights and limitations to unemployment compensation which are not a part of any agreement between the employer and the union but are created and defined by the statute. The case must be decided in that context.

Accordingly, we find under the applicable law that there is no substantial evidence to sustain the trial court's decision finding appellee Kiene qualified to receive unemployment compensation benefits after June 23, 1977, and that the evidence substantially shows Kiene, without good cause, refused an offer of suitable work on or about said date which disqualifies him from receiving unemployment compensation thereafter.

We therefore reverse the judgment of the trial court and remand the cause with directions that the Nebraska Department of Labor Appeal Tribunal determine the amount of unemployment compensation received by appellee Kiene subsequent to June 23, 1977, which by the terms of this opinion he was not entitled to receive, and that he be ordered to repay the same to the Commissioner of Labor, State of Nebraska, with appropriate credit to appellant's unemployment compensation experience account with said commissioner.

Costs herein are taxed to the Commissioner of Labor.

REVERSED AND REMANDED WITH DIRECTIONS.