ARKANSAS OKLAHOMA GAS CORPORATION *v.*
DIRECTOR, Arkansas Employment Security Department,
and Delores Y. Gross

E02-04                                                    94 S.W.3d 366

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered December 23, 2002

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Heather A. Owens* and *Benjamin H. Shipley III*, for appellant.

*Allan Pruitt*, for appellee Director.

JOHN E. JENNINGS, Judge. Arkansas Oklahoma Gas Corporation appeals the Board of Review's decision that its former employee, Delores Gross, was eligible for unemployment compensation benefits even though she had been made an offer of

employment. In awarding benefits, the Board found that the job offered Ms. Gross was unsuitable because accepting it would effectively require her to resign from a labor union. We agree with appellant that the Board's decision is contrary to the law, and we reverse and remand.

Ms. Gross had been employed by appellant for twenty-one years and was a union member of Teamsters Local 373, which had negotiated a collective bargaining agreement with appellant. For nineteen years, Ms. Gross worked as a meter reader, a job that is classified as a union "bargaining unit" position. In 1999, she became a dispatcher, which was also a bargaining unit position, but she was disqualified from that job after eight months due to unsatisfactory performance. Thereafter, she accepted a job from appellant in the "GPS" program where she was responsible for locating and charting customer meters on a map. This job was a temporary position that would come to an end when the project was completed. Although this job was a non-union, or a "non-bargaining unit" position, Ms. Gross was considered "on loan" from the union in this temporary assignment, which allowed her to retain job-bidding rights for bargaining unit positions without losing her years of seniority.

The GPS position expired on September 11, 2001. Ms. Gross had not bid on any of the thirty-five bargaining unit positions that had become available during the eighteen months she worked in the GPS program. When the GPS assignment ended, there were no bargaining unit positions open. Appellant offered Ms. Gross a job as an overdue bill collector, a non-bargaining unit position. This job came with a pay increase of two cents an hour and provided other employee benefits, including participation in the company's 401(k) plan. Ms. Gross declined to take this job. She explained that, because it was non-union, she would be left without union protection such that she could be fired without cause and without recourse to union grievance procedures. Taking the job would also result in the loss of her seniority in the job-bidding process. Although she would remain eligible to bid on bargaining unit positions within the company, she would not be hired for the job if another union employee with greater seniority bid on the position.

■ ■ The fundamental purpose of our employment security law is to aid those persons who find themselves unemployed through no fault of their own. Ark. Code Ann. § 11-10-102(3) (Repl. 2002). In keeping with that purpose, an individual is disqualified for benefits if he fails without good cause to accept available suitable work when offered. Ark. Code Ann. § 11-10-515(a)(1)(B) (Repl. 2002). The law further provides that a prospective job is not suitable, "if as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization." Ark. Code Ann. § 11-10-515(d)(3) (Repl. 2002). The Board in this case found that the job as collector was unsuitable because accepting it with the loss of seniority and union protection was tantamount to requiring Ms. Gross to resign from the union.

■ The issue is controlled by the supreme court's decision in *Thornbrough v. Stewart*, 232 Ark. 53, 334 S.W.2d 699 (1960). There, the claimant was an unemployed union member who refused to accept non-union work because his union might fine or expel him for taking a job that paid less than the union scale. The court rejected the claimant's argument that he had good cause to refuse the job or that he was protected from disqualification under the provision of the statute, cited above, that is now codified as Ark. Code Ann. § 9-10-515(d)(3). The court held that the threat of sanction by union rules did not render the job unsuitable under the statute and that the claimant forfeited his right to receive unemployment compensation by refusing to accept the job. In so holding, the court accepted the view that the statute did not intend union-made rules to determine the suitability of offered employment.

Because it was a case of first impression, the *Thornbrough* court reviewed decisions from other jurisdictions in adopting what it called the "universally" accepted rule. The court particularly relied on the reasoning in *Chambers v. Owens-Ames-Kimball Co.*, 67 N.E.2d 439 (Ohio 1946). There the worker had been a union member for twenty-seven years, and when unemployed he declined a non-union job because it might have resulted in disciplinary action by his union. The worker argued that the Ohio

statute, which is similar to our own, did not bar benefits to an unemployed worker who refuses employment which might result in the denial of his right to retain union membership because of prospective disciplinary action by the union. The court disagreed, saying:

> Furthermore, the interpretation of appellee would make the operative effect of a refusal to work depend entirely on the whim or caprice of an organization to which the applicant for unemployment compensation might belong. . . . Under such an interpretation, the right of the applicant for unemployment compensation would not be fixed or determined by the provisions of the statute but by rules adopted by organizations in which the applicant has membership. Such interpretation of the statute, and as a consequence its administration in conformity to such interpretation, is clearly untenable.

*Id.* at 442. The court also determined that the word "condition" used in the statute should not be interpreted to mean the "result" of accepting employment, but that the term meant "requirement" and referred to restrictions contained in the offer of employment made by the employer. Finally, the court observed that an award of benefits to a union worker who refuses an otherwise suitable, but non-union job, would discriminate against non-union workers who would be disqualified for refusing to accept the same job:

> Under appellee's interpretation of the statute, an unemployed nonunion workman would be obliged to accept the same job which the appellee refused to accept and would be required to work without right to participate in the unemployment compensation benefits. On the other hand, the appellee could refuse to accept the same job at the same wages and by reason of such refusal qualify himself to receive benefits as an unemployed workman. In our view, such an interpretation of the statute would not permit it to operate in a constitutional manner. It would result in discrimination and injustice. The law must do justice. There can be no valid classification of persons based upon membership or nonmembership in a labor organization, which would operate to differentiate rights to receive benefits under the unemployment compensation statute.

*Id.* at 443.

The *Thornbrough* court also cited with approval the decision in *Barclay White Co. v. Unemployment Compensation Board of Review*, 50 A.2d 336 (Pa. 1947). In that case, the worker had been a union member for over thirty years, and he refused non-union employment because taking the job might have subjected him to suspension or expulsion from the union and would result in the loss of all membership advantages, including sickness, old age, and death benefits. As in *Chambers, supra*, the court concluded that the language "condition of being employed" refers to a condition, made in the offer of employment by the employer, *requiring* the prospective employee to resign from a labor organization. In denying benefits, the court stated:

> The public policy of the Commonwealth does encourage membership in labor organizations but retention of membership therein is not a surrender to circumstances of the kind and quality which will turn voluntary unemployment into involuntary employment. It would do great violence to the clear and unequivocal wording of the statute to hold that a labor union or any other organization can control payments of unemployment benefits to its members by merely forbidding them to work at wages less than those set by it, or with certain persons, or at certain places, or under certain conditions. If eligibility under such conditions is to be added to the Act, that must be done by the legislature, and not the Courts. . . . To hold otherwise is the equivalent of saying that a union may adopt its own definition of suitable work and determine, by rule and bylaw, what does and does not constitute *good cause* for refusing referred employment.

*Id.* at 341.

The court in *Thornbrough* also relied on the decision in *Bigger v. Unemployment Compensation Commission*, 53 A.2d 761 (Del. 1947). There, the claimant refused a non-union job because his union forbid its members from working at non-union jobs under possible penalty of expulsion. The court disagreed with the claimant's argument that accepting the job was the equivalent of requiring him to resign from the union. The court observed:

> In the body of the Act, the Legislature has defined with some care the standards for determining who is entitled to benefits from the reserve fund created. Nothing in the Act suggests that a

union or a group of employers or any one else may add to, or subtract from the standards laid down by the Act itself. From what has been said, it is clear that the Legislature had no thought of strengthening or of weakening the power of unions. Its purpose was to protect all workmen involuntarily employed. Membership in a union gives an individual no greater rights under the Act than he otherwise has. Likewise, a group of individuals cannot secure higher privileges merely by adopting a rule which binds themselves to a certain course of conduct. We cannot agree with a theory which would have the effect of substituting a union rule for a statutory requirement. If a man wants to benefit by the Act, he must comply with its provisions; his unemployment is not involuntary if he refuses a job without good cause; good cause means those reasons contained in the Act.

*Id. at 564-565.*

The rule espoused by these courts and the court in *Thornbrough* remains the majority view. *See Wentz Heating & Air Conditioning Co. v. Kiene*, 274 N.W.2d 547 (Neb. 1979); *Adams v. Auchter Co.*, 339 So. 2d 623 (Fla. 1976); *In re Beatty*, 210 S.E.2d 193 (N.C. 1974); *Miville v. Maine Employment Security Comm'n*, 219 A.2d 752 (Me. 1966); *Norman v. Employment Security Agency*, 356 P.2d 913 (Idaho 1960); *State Department of Industrial Relations v. Harbin*, 365 So.2d 313 (Ala. Civ. App. 1978); *Lemelin v. Administrator*, 242 A.2d 786 (Conn. Super. Ct. 1968). *Accord Brown v. Division of Employment Security*, 973 S.W.2d 199 (Mo. Ct. App. 1998).

In addition, the same rule applies where there is a collective-bargaining agreement negotiated between the employer and labor union. In *Norman v. Employment Security Agency*, 356 P.2d 913 (Idaho 1960), the court accepted the reasoning of its appeals examiner who said:

To permit work to be deemed unsuitable because of the provisions of such a [union] contract would be to allow unions and employers to dictate the conditions under which the Agency would or would not pay benefits. The matter of a union-negotiated contract is one of concern to the employer and the union. No union contracts can amend the law of the State of Idaho so as to grant its members privileges not contemplated by the law.

*Id.* at 918. *See also In re Beatty,* 210 S.E.2d 193 (N.C. 1974); *Mills v. Mississippi Employment Security Comm'n,* 89 So. 2d 727 (Miss. 1956).

■ In the case at bar, Ms. Gross rejected the offer of non-union employment because of the loss of union protection and seniority. The loss of these privileges, whether by union rule or a provision in a collective-bargaining agreement, does not provide good cause for rejecting the job and does not render the offered employment unsuitable. Otherwise, there is no evidence in the record that she was required by appellant to resign from the union before accepting the job as collector. On the contrary, the evidence was that she remained eligible to bid on *union* positions while holding this job.

■ While we are entirely in agreement with the dissenting judges' view of the importance of our fidelity to the standard of review in these cases, we need only say that the substantial-evidence standard is applicable only when the issue is one of fact. The rule has no application when the issue is one of law, as it is in the case at bar.

■ There was testimony from Ms. Gross that being a collector was a less than desirable job. Because the Board made no finding on the issue of suitability generally, we remand for a decision on this issue. *Hays v. Director,* 251 Ark. 659, 473 S.W.2d 926 (1971).

Reversed and remanded.

PITTMAN, ROBBINS, BIRD, VAUGHT, and ROAF, JJ., agree.

HART, GRIFFEN, and NEAL, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. In this case, the employer had the option of accepting the claimant from the union in a temporary assignment as an "on loan" employee as was her status while she worked in the "GPS" program for eighteen months. The employer, however, refused to accept claimant as a temporary employee in the offered position as a bill collector. Here, it was solely the employer who conditioned the offer of employment only as a permanent and non-union posi-

tion. By its unilateral act, the employer imposed on appellant as a condition of her employment the requirement that she lose the benefits provided by her union membership and lose more than eighteen years of seniority in her ability to bid on opening jobs within the company.

As noted by the majority, our law does not disqualify a claimant from obtaining unemployment benefits "[i]f as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bonafide labor organization." Ark. Code Ann. § 11-10-515(d)(3) (Repl. 2002). In my opinion, the facts clearly establish that the employer by its acts conditioned appellant's acceptance of employment on her losing her union benefits and, therefore, fulfilled the provision that she was required to resign from the union.

The facts of this case are clearly distinguishable from those set out in *Thornbrough v. Stewart*, 232 Ark. 53, 334 S.W. 2d 699 (1960). In that case, the facts did not establish that the employer made any conditions of employment or had the ability to change the job from non-union to union. Here, the employer chose to offer the job to claimant on the condition that she resign from the union although they had the ability to accept claimant in the position of a temporary assignment that would have allowed her to maintain the benefits in that organization. Therefore, I would affirm.

NEAL, J., joins.

WENDELL L. GRIFFEN, Judge. dissenting. The result announced by the majority opinion violates principles of judicial review applied to decisions from the Board of Review since the first day our court began reviewing appeals in unemployment cases. We are supposed to decide appeals involving questions about Board findings regarding suitability of available work, or even whether there is good cause for refusing work deemed suitable, by determining if the findings reached by the Board of Review are supported by substantial evidence. The majority opinion does not even pay polite reference to the substantial evidence standard of review in reversing the finding by the Board of Review that the appellee was not offered suitable work. Instead,

the result announced today amounts to a naked exercise in fact-finding, albeit undertaken in reliance on a forty-two-year-old decision by our supreme court involving facts that were clearly different from those in the record before us. Moreover, in undertaking that fact-finding, the majority has ignored the public policy considerations that the Arkansas General Assembly, the body that represents the collective will of the Arkansas people, analyzed before enacting the legislation codified at Arkansas Code Annotated section 11-10-515(d). Based on the sound principles that have governed our exercise of judicial review in unemployment compensation cases throughout the history of this court, I conclude that substantial evidence supports the finding made by the Board of Review in this case. Thus, I would affirm the decision reached by the Board.

The standard of appellate review for decisions of the Board of Review has been stated so often that it is superfluous to cite case authority for it. Arkansas law holds that the findings of the Board of Review are conclusive, absent fraud, if supported by evidence. Ark. Code Ann. § 11-10-529(c)(1) (Repl. 2002). We have long held that the standard of evidentiary review in such appeals is substantial evidence. *See Shipley Baking Co. v. Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). We have defined "substantial evidence" as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Sims v. Everett*, 2 Ark. App. 336, 621 S.W.2d 229 (1981). Our appellate review is limited to determining whether the Board of Review could reasonably arrive at the result it reached on the evidence before it, notwithstanding that there may be evidence in the record upon which our court might have reached a different conclusion had it been functioning as trier of fact in the first instance and confronted with the same evidence considered by the Board. *Dillaha Fruit Co. v. Everett*, 9 Ark. App. 51, 652 S.W.2d 643 (1983). This principle flows from our recognition that the Board of Review has the right to determine witness credibility and to draw inferences from their testimony. *See Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). And, at the top of our analytical pyramid, rests the often cited principle that in reviewing the sufficiency of evidence on appeals from the Board of Review, the Court of

Appeals is to consider the evidence in the light most favorable to the successful party below and affirm that decision if there is substantial evidence to support the Board's decision. *See Feagan v. Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983).

In the face of this established set of principles for undertaking judicial review, today the majority has decided to reverse a finding of the Board of Review that "the position offered to the claimant [Delores Gross] was unsuitable." The Board found the position unsuitable because although the position involved an offer of comparable pay, it "would have removed the claimant from the protection and security provided by union membership and representation, from which she had benefitted for twenty-one years." The majority opinion does not cite the substantial evidence standard or any of the other longstanding rules that govern our appellate review of findings made by the Board of Review. Instead, it reverses the Board's finding that Arkansas Oklahoma Gas Corporation offered Gross a job that was not suitable by undertaking what amounts to *de novo* review. In short, the majority reverses the Board because it believes that the collector job, which Delores Gross refused to accept, was "suitable."

Our court does not exist to decide whether the collector job offered by the employer and refused by Gross was suitable; we decide whether the Board's finding on that question is supported by substantial evidence. If so, we are supposed to affirm the Board of Review even if we would have reached a different result had we been deciding the case below. Our court does not decide what inferences should be drawn from the evidence presented to the Board of Review, or what conclusions should be drawn from those inferences for that matter. Our function is to decide whether the conclusions drawn from the inferences have the support of substantial evidence. And if we conclude that substantial evidence is lacking, we should say so rather than reach a decision as if we are the trier of fact. But we are supposed to analyze the substantial evidence question by giving the result reached by the Board of Review the deference due a decision made by a competent trier of fact presented with live witnesses and the duty of assessing credibility and weighing evidence.

There are two questions presented by this appeal. The first question is whether the finding by the Board of Review that Gross refused an offer of available suitable work is supported by substantial evidence. If substantial evidence supports that finding, we should then consider if there is substantial evidence to support the Board's finding that Gross had good cause to refuse an offer of suitable work so as to be entitled to unemployment benefits on account of her discharge by the employer.

Arkansas Code Annotated Section 11-10-515(a)(1) (Repl. 2002) states, in pertinent part, as follows:

> If so found by the Director of the Arkansas Employment Security Department, an individual shall be disqualified for benefits if he has failed, without good cause: . . . (B) To accept available suitable work when offered.

Arkansas Code Annotated section 11-10-515(d) (Repl. 2002) states:

> Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:
>
> (1) If the position offered is vacant due to a strike, lockout, or other labor dispute;
>
> (2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;
>
> (3) If as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.

The Board of Review found that the collector job that the employer offered Gross was unsuitable because "the position would have removed [Gross] from the protection and security provided by union membership and representation, from which she had benefitted for twenty-one years." We are supposed to review that finding in the light most favorable to Gross, the successful party below, and in a manner that defers to the Board's recognized role in weighing evidence and evaluating witness credibility.

We need only look to the Board's opinion to know what evidence, if any, it relied on in reaching its decision.

> The claimant testified that she worked for the employer for approximately twenty-one years. She indicated that she is a member of Teamsters Local 373, which represents members who work for the employer. The claimant worked as a meter reader for nineteen years. She stated that the meter reader position is a bargaining unit position, which means that the position can only be obtained by bidding on it pursuant to the union bargaining agreement.
>
> The director of employee relations (hereafter "director") stated that, in 1999, the claimant bid on a position as dispatcher, also a bargaining unit position, and she was subsequently awarded the position. The director indicated that the claimant worked as dispatcher for eight months, after which she was "disqualified" for the position, due to unsatisfactory performance. The director testified that the claimant was offered a temporary position in the "GPS" program, whereby the claimant would assist in locating and charting customer meters on a map.
>
> The director pointed out that, although the GPS position was temporary and non-union, the employer offered the claimant the position in order to retain her as an employee. She further stated that, per an agreement with the union, the claimant was "on loan" while she was temporarily assigned to the non-union position, which allowed the claimant to retain the right to bid on a union position and return to her former union status when the GPS position expired. The director testified that the claimant's pay increased from $12.83 per hour to $13.07 per hour in the GPS position.
>
> The director stated that the claimant worked in the GPS position for approximately eighteen months, until September 11, 2001, when the program expired. The director testified that the claimant was given the right to bid on another position within the company, but nothing was available except a collector position. She stated that the collector position paid only two cents more than the claimant earned in the GPS program, but accepting the position would allow the claimant to retain employment and keep her employee benefits.
>
> The director also indicated that the claimant would gain eligibility to participate in the 401K plan, to which the employer con-

tributed. She stated that the collector position was full-time and non-union. The director stated that the claimant asked if this "was just a job to place her in until she could be moved to another position," and the director responded no. The director stated that the claimant refused the position, saying she wanted to retain her status within the union.

The claimant testified that the collector position was a non-union position, which meant she could be discharged without cause, as she would no longer be covered under the union bargaining agreement. She stated that she asked the director if the collector position would be considered temporary until she could find another position, but the director indicated that the position would be permanent. She stated that the director indicated that her pay would be "around the same", and did not indicate that it would actually increase two cents. The claimant pointed out that, although her GPS position was also non-union, she retained her seniority and bidding rights within the union.

The claimant testified that accepting the collector position would have permanently removed her from status as a union employee, unless she was able to bid back into a union position. She indicated that this would be difficult to do because she would have lost her seniority and therefore, she would receive consideration for a union position only after all union employees had an opportunity to bid on the job. The claimant indicated that, as a collector, she would have been expected to call customers who were delinquent in paying their gas bills and to demand immediate payment; she would then be required to go to the customer's home and collect the delinquent payment or turn off the gas service.

The claimant stated that the position was considered stressful and, as a result, it experienced a high turnover of employees. She stated that the position had become more stressful in recent years due to an increase in the price of natural gas, which caused a significant increase in the number of delinquent accounts. In addition, the claimant pointed out that the company's new policy required that she shut off service immediately, rather than allowing the customer to make arrangements on a delinquent bill, as had been done in the past. The claimant testified that she had reservations about taking the collector position and she did not want to lose her representation as part of the union. She refused the job.

I burden this opinion with the foregoing lengthy quotation to emphasize what should be obvious. The majority opinion does not even hint, let alone explain, why this evidence is somehow not "substantial" so as to justify reversing the Board's finding that the collector job was not suitable. We do not know whether the evidence is not substantial because the collector job paid more, or because the collector job was permanent rather than a temporary position, or because it was one in which Gross would have been eligible to participate in the employer's pension and profit-sharing plan, or for some other reason. We do not know what judicial precedent supports the notion that this proof is not substantial. This predicament occurs when we attempt to decide appeals without regard for the standard of review.

Instead of deciding the substantial-evidence question, the majority has adopted the appellant's argument that the outcome of this appeal from the Board's finding that the collector job was unsuitable "is controlled by the supreme court's decision in *Thornbrough v. Stewart*, 232 Ark. 53, 334 S.W.2d 699 (1960)." *Thornbrough* involved an appeal from a circuit court's finding that a union member who lost his job was not disqualified from receiving unemployment benefits after he refused to accept a job offer from another employer because the job paid less than the union scale and might have exposed the claimant to sanctions from the union had he accepted it. Although the claimant in *Thornbrough* argued that he had good cause to refuse the job and that he was protected from disqualification by the statute now codified as Ark. Code Ann. § 11-10-515(d)(3), our supreme court held that the mere threat of sanctions by the union did not make the job unsuitable and that refusal to accept the job for that reason did not constitute "good cause." *Thornbrough, supra.*

Nothing in the record before us supports the conclusion that there was anything contingent or uncertain about the consequences to Delores Gross if she accepted the collector job. As the extensive quotation from the Board of Review makes abundantly clear, both Gross and the employer's director of employee relations testified that the collector job was permanent and a non-union position to which Gross would not be able to enjoy the job pro-

tection rights afforded union members. To again quote from the Board of Review:

> She [the director of employee relations] stated that the collector position was full-time and non-union. The director stated that the claimant asked if this was 'just a job to place her in until she could be moved to another position', and the director responded no. . . . The claimant testified that . . . she asked the director if the collector position would be considered temporary until she could find another union position, but the director indicated that the position would be permanent. (Emphasis added.)

Unlike in *Thornbrough*, where the claimant refused available work based on what the supreme court reasoned was merely the "possibility of being fined or discharged by his union if he accepted work for less than union wages," all the evidence before us shows that the claimant in the present appeal knew that she would lose her seniority rights and union protection from unfair dismissal or workplace treatment if she accepted the collector job. *Thornbrough* is not controlling on this case because the facts are clearly different.

The appellant cites *Thornbrough* as authority for the proposition that available work is not unsuitable under Arkansas law because it removes an employee from union protection or security or because it "essentially" requires resignation from a union. That argument persuaded my colleagues in the majority, but rings quite hollow to me. Aside from the fact that *Thornbrough* is factually distinguishable from this case because there was no contingency about whether Gross would lose her union protection by accepting the collector job, this case has yet another important factor that sets it apart from *Thornbrough*. *Thornbrough* involved a claim for unemployment benefits by an *unemployed* worker. Yet, it is uncontroverted that Gross was employed by Arkansas Oklahoma Gas Corporation before the collector job was offered and that she was employed when she refused the collector job. The record plainly shows that the employer terminated Gross from its employ after she refused to accept the collector position. Based on this uncontradicted proof and in view of the straightforward declaration in Ark. Code Ann. § 11-10-515(d)(3) that "benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work . . . [i]f as a condition to being employed, the individual would be required to . . . resign from . . .

any bona fide labor organization," I find nothing persuasive about the appellant's argument or its reliance upon *Thornbrough*.

Finally, the majority decision mocks as well the public policy considerations the General Assembly had in mind when it enacted the statute before us. Section 11-10-515(d)(1) was enacted to ensure that unemployment benefits would not be withheld from union members who refused to accept offered work made available due to a strike, lockout by employers, or other labor dispute. Subsection (d)(2) was enacted to protect the rights of unemployed workers to receive unemployment benefits rather than be forced to accept work offered where the "wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality." And, subsection (d)(3) operates to protect the rights of unemployed workers to receive unemployment benefits where they have refused job offers conditioned on the requirement that they "join a company union or . . . resign from or refrain from joining any bona fide labor organization."

The General Assembly, composed of elected representatives of Arkansans from all incomes, employment situations, and relationships, enacted this statute to address real problems such as the one Gross faced when her employer intentionally offered her work as a collector knowing that she would lose her protection as a union member upon accepting that job, and made accepting the job a prerequisite for continued employment. It is wrong for our court to decide this appeal as if the General Assembly had not enacted the statute. It is wrong for us to decide her appeal as if the facts in this case do not squarely fall within the statute. It is wrong for us to treat her case as if we are functioning as the trier of fact rather than engaged in judicial review subject to the substantial evidence standard. And it is wrong for us to decide her case as if the uncontradicted facts in this record resemble anything close to the situation our supreme court addressed in *Thornbrough*.

I dissent.

I am authorized to state that Judge NEAL joins in this dissent.