CHANDLER, J., for the Court.
¶ 1. Alvin M. Hudson appeals pro se from the denial of unemployment benefits.
FACTS
¶ 2. Hudson worked as a pipefitter for Nepco from September 3, 2002, until September 12, 2002. On September 18, 2002, Hudson filed a claim for unemployment benefits. The claims examiner found that Hudson voluntarily left work to seek other employment and denied the claim. Hudson requested reconsideration, and a telephonic hearing was held before an appeals referee. Hudson was the sole witness; the employer did not respond to the notice of hearing.
¶ 3. Hudson alleged the following facts in his written request for reconsideration and at the hearing. Hudson suffers from high blood pressure. When he was hired at Nepco, a company nurse checked his blood pressure and noted that it was high. Hudson’s first day working at a Nepco project site went well; his foreman was *1067 absent from work. On Hudson’s second day, the foreman, “Ax,” appeared at work and continually told Hudson that he had to stay busy, look busy, or be discharged. For the duration of Hudson’s employment at Nepco, Ax communicated these warnings to Hudson at least twice daily, though Hudson performed all his assignments to best of his abilities. Hudson considered this harassment. At a September 9 safety meeting, Ax informed the employees that the company intended to lay off workers and was looking for workers to “run off.” Ax pulled Hudson aside at this meeting and told him to be very careful not to get caught talking to anyone. Hudson felt uncomfortable and singled out because he was the only employee whom Ax subjected to constant warnings.
¶ 4. On September 10, Hudson became concerned that the situation was causing his blood pressure to elevate. The safety department checked his blood pressure and confirmed that it was elevated. Hudson got permission to leave work to visit his physician. The physician found that Hudson’s blood pressure was elevated and increased his blood pressure medication. The next day, Hudson informed Ax that the harassment was raising his blood pressure, but Ax continued to urge Hudson to stay busy or, if there was no work to be done, look busy. At this point, Hudson felt that, due to his health, it was unsafe for him to stay at the job. Hudson told Ax that he could not take it anymore and that he could not stay under the circumstances. The project manager seemed happy to see Hudson leave. Hudson informed a human resources employee that he was leaving. The employee ascertained from Hudson that he was not quitting to go to another job, but did not otherwise inquire into Hudson’s reason for quitting.
¶5. Hudson submitted a UI-538 form completed by Dr. Samuel Simmons in reference to Hudson’s physical condition. On the form, Dr. Simmons indicated that he treated Hudson for hypertension and obesity, and that on September 9, 2002, he advised Hudson to leave work if he was unable to tolerate the work. Dr. Simmons stated that Hudson had limited ability to perform strenuous activity but was able to perform other duties, and that it was unknown whether Hudson could do his usual work.
¶ 6. The appeals referee denied Hudson’s claim, and made the following findings:
The facts and evidence in this case show that the claimant voluntarily quit this position because he felt like his foreman was placing pressure on him and causing his blood pressure to elevate. The evidence presented by the claimant in this case does not substantiate a finding that the employer caused his blood pressure to elevate, nor has the claimant established that his physician advised him to leave his job due to his health concerns. The claimant did not exhaust all avenues with this employer in an effort to resolve this problem before he quit. Consequently, the decision rendered by the claims examiner is in order.
¶ 7. Hudson appealed to the MESC Board of Review, which adopted the opinion of the appeals referee. The Circuit Court of George County affirmed the decision of the MESC, and Hudson appeals.
LAW AND ANALYSIS
¶ 8. Unemployment benefits are available for employees who leave work involuntarily, through no fault of their own. Mills v. Miss. Employment Sec. Comm’n., 228 Miss. 789, 797, 89 So.2d 727, 729 (1956) (quoting Dwyer v. Appeal Bd. of Mich. Unemployment Comp. Comm’n., 321 Mich. 178, 188, 32 N.W.2d 434, 437 *1068 (1948)). An employee is disqualified from receiving unemployment benefits if the person left the job voluntarily without good cause. Miss.Code Ann. § 71-5-513(A)(1)(a) (Supp.2003). The employee has the burden of proving that he left the job for good cause. Miss.Code Ann. § 71-5-513(A)(l)(c) (Supp.2003).
¶ 9. Our review of the MESC’s denial of unemployment benefits is limited to questions of law as provided in Mississippi Code Annotated section 71-5-531 (Rev.2000). “The Board’s findings of fact are conclusive if supported by substantial evidence and without fraud.” Hoerner Boxes, Inc. v. Miss. Employment Sec. Comm’n., 693 So.2d 1343, 1347 (Miss.1997). The Board’s finding that an employee has quit work voluntarily without good cause is a question of fact that will be affirmed if supported by substantial evidence. Huckabee v. Miss. Employment Sec. Comm’n., 735 So.2d 390, 394 (¶ 14) (Miss.1999).[1]
¶ 10. Hudson does not dispute the MESC’s finding that he voluntarily left the job. Hudson argues that he proved that he had good cause to leave Nepco because he presented evidence that his physician instructed him to quit the job due to a health risk posed by the foreman’s harassment. Hudson argues that the MESC ignored this medical evidence showing good cause.
¶ 11. As the finder of fact, the MESC is charged with determining the weight and credibility of the evidence. Byrd v. Pub. Employees’ Ret. Sys., 774 So.2d 434, 438 (¶ 15) (Miss.2000). The MESC found that Hudson had not established that his physician advised him to leave the job due to his health concerns. In his report, Dr. Simmons specifically refused to opine whether or not Hudson could perform his usual employment as a pipefitter at Nepco, stating that whether he could do the job was “unknown.” Dr. Simmons stated that Hudson was physically limited from performing strenuous activity, and that Hudson should leave any work that he could not tolerate. Hudson argues that Dr. Simmons’ directive for Hudson to leave any work he could not tolerate justified Hudson’s decision to leave Nepco. One reasonable interpretation of Dr. Simmons’ instruction for Hudson to leave work he could not tolerate is that Dr. Simmons thought Hudson should cease any activity he found too strenuous. Hudson does not claim that he left Nepco to avoid strenuous activity; rather, he claims he left because his blood pressure became elevated due to anxiety over the foreman’s frequent warnings. Therefore, the MESC’s finding that the physician did not advise Hudson to leave the job because of his health concerns is supported by substantial evidence in the form of a reasonable interpretation of the physician’s report.
¶ 12. The MESC’s finding that Hudson failed to prove good cause is also supported by Hudson’s negligible effort to resolve the problem with the employer prior to quitting. Hudson testified that he told the foreman that the foreman’s conduct was elevating his blood pressure and asked him to stop. When the foreman again told Hudson to stay busy or look *1069 busy, Hudson quit. Hudson never sought to remedy the problem by reporting it to the foreman’s supervisor or to the human resources department, or by taking any other reasonable measure to allow the employer to solve the problem. See Hoerner Boxes, 693 So.2d at 1347. Therefore, the MESC’s finding that Hudson voluntarily left his job without good cause is supported by substantial evidence.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY AFFIRMING THE DECISION OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS AFFIRMED.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.

. Though Hudson was the only witness before the appeals referee, he had the burden of proof that he left the job for good cause. Therefore, precedent addressing the effect of no employer witness appearing to present evidence on misconduct is inapplicable, as the burden for misconduct belongs to the employer. Miss.Code Ann. § 71-5-513(A)(1)(c) (Supp.2003); see Little v. Miss. Employment Sec. Comm’n., 754 So.2d 1258, 1260 (¶ 11) (Miss.Ct.App. 1999); Campbell v. Miss. Employment Sec. Comm’n., 782 So.2d 751 (¶¶ 21-22) (Miss.Ct.App.2000).