# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-01170-COA

**CALVIN W. HEREFORD**                                                        **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                             **APPELLEE**
**EMPLOYMENT SECURITY**

DATE OF JUDGMENT:          06/03/2019
TRIAL JUDGE:          HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:          LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          CALVIN W. HEREFORD (PRO SE)
ATTORNEYS FOR APPELLEE:          ALBERT B. WHITE
          JAMES RANDALL BUSH
NATURE OF THE CASE:          CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:          AFFIRMED - 11/17/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A man filed for unemployment benefits after voluntarily quitting his job for medical reasons. Finding that the man lacked "good cause" for leaving, a claims investigator determined that he was ineligible to receive the benefits. The man appealed the investigator's decision.

¶2. Following a telephonic hearing, an administrative law judge (ALJ) determined that the man failed to exhaust available options to remain employed prior to quitting and upheld the claim investigator's decision. A board of review further upheld the ALJ's decision and adopted her findings. Finding no error, we affirm.

# FACTS

¶3.    Calvin Hereford was employed as a security guard for Securitas Security. During his employment, he took a medical leave of absence to undergo physical therapy for muscular dystrophy, a disease that gradually caused his muscles to become smaller and weaker. While on leave, Hereford learned from his physician that he would need an electric-powered wheelchair.

¶4.    Hereford's physician did not advise him that he would need to quit his job. His medical provider ultimately left any decision regarding whether to keep working up to him.

¶5.    Hereford contacted his supervisor by phone and informed him of the wheelchair limitation. The supervisor told the security guard that he missed him at work and would try his best to accommodate his needs. According to Hereford, his supervisor stated that he would try to add a wheel-chair ramp and fulfill "any further accommodation [he] [would] need to [remain] employed with Securitas."

¶6.    Just two weeks after this phone conversation, and while still on medical leave, Hereford decided to end his employment. He left a message with another security officer on duty and asked the officer to inform the supervisor that he was quitting "due to medical reasons as it relates to accessibility issues." He further claimed he was leaving because his supervisor "never contacted [him] back regarding any accommodations." Hereford later spoke with another Securitas employee and likewise informed her that he was quitting for "medical reasons" related to "accessibility issues."

¶7.    Hereford promptly filed for unemployment benefits with the Mississippi Department

2

of Employment Security. But after interviewing the security guard, a claims investigator found he failed to show "good cause" for voluntarily leaving Securitas because "he was not advised by a doctor" to quit his job. As a result, Hereford was denied unemployment benefits.

¶8. Hereford appealed and an ALJ afforded him a telephonic hearing. During this hearing, he spent much of his time highlighting reasons why working as a security officer in a wheelchair was impractical. For example, Hereford implied that returning to work in a wheelchair might have been inconvenient because his power chair would have been too large to fit through the door of his office. However, he admitted he never took his chair there to determine if it could fit through the door.

¶9. Hereford also expressed concerns about the company's lack of handicapped parking spaces. But he admitted that prior to quitting his job, he declined to request such an accommodation because he ultimately believed the job itself was too dangerous for him to fulfill in a wheelchair.

¶10. Susan Johnson, a security services manager, also testified at the telephonic hearing. She stated that Hereford was an "excellent" employee and that "[they] hated to lose him." Johnson further testified that the company was willing to accommodate the security guard's required wheelchair-use by either building a ramp or transferring him to a location that was better suited for a ramp. In response to her testimony, Hereford stated that he would have rejected the proposed accommodation because he preferred his current location.

¶11. Most significantly, Hereford admitted that neither his physician nor medical provider

3

advised him to quit his job. In fact, he stated that he made an independent decision to discontinue working due to "accessibility issues." When the ALJ asked the security guard why he declined to discuss accommodation options with his employer prior to quitting, he replied that he was "just fed up with [his] employer altogether."

¶12.   Based on these facts, the ALJ affirmed the claims investigator's decision and upheld Hereford's denial of unemployment benefits. Specifically, the ALJ found that the security guard failed to demonstrate good cause for voluntarily leaving his job because his "physician did not advise him to leave his employment," and "he never informed his employer he would need certain accommodations." The Board of Review upheld the decision and adopted the ALJ's findings. Aggrieved, Hereford appeals.[1]

## STANDARD OF REVIEW

¶13.   "In reviewing a decision of the Mississippi Department of Employment Security (MDES), 'the findings as to the facts of the Board of Review are conclusive if supported by substantial evidence and absent fraud.'" *Conner v. Miss*. *Dep't of Emp*. *Sec.*, 247 So. 3d 341, 343 (¶9) (Miss. Ct. App. 2018) (quoting *Welch v. Miss. Emp. Sec. Comm'n*, 904 So. 2d 1200, 1201 (¶5) (Miss. Ct. App. 2004)). Therefore, "the denial of unemployment benefits will be disturbed on appeal only if the agency's decision (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of power granted to the

---

[1] Our Supreme Court assigned Hereford's case along with several corresponding motions to this Court. We denied Hereford's motion to exclude certain documents from the appellate record and denied his motion for default judgment against MDES, in which he sought in excess of $4,000,000. We also denied his motion for reconsideration, finding that appellants are generally disallowed from seeking reconsideration of motions under Mississippi Rule of Appellate Procedure 27(h).

4

agency, or (4) violates the claimant's constitutional rights." *Id*.

## ARGUMENT

¶14.    The only dispositive issue Hereford presents on appeal is whether he voluntarily quit his job at Securitas Security with "good cause." He essentially argues that he left Securitas with "good cause" because his departure was based on medical reasons beyond his control.

¶15.    Under Mississippi Code Annotated 71-5-513, a person who voluntarily leaves work qualifies to receive unemployment benefits only if he can show that he had "good cause" to terminate his employment. Miss. Code Ann. § 71-5-513(A)(1)(a) (Supp. 2019). MDES Unemployment Insurance Regulation 309.00 states that in order to prove this fact, a person must demonstrate that an "ordinary[,] prudent employee" in his predicament would feel compelled to terminate his employment. He must also show that prior to leaving his job, he "[explored] alternatives to quitting" and "[made] reasonable efforts to preserve employment."

¶16.    This Court addressed the question of what constitutes "good cause" in *Hudson v. Mississippi Employment Security Commission*, 869 So. 2d 1065 (Miss. Ct. App. 2004). In that case, a pipefitter filed for unemployment benefits after quitting his job due to stress and blood pressure complications. *Id*. at 1066-67 (¶¶2, 4). Before the worker quit, his physician had advised him to leave his job "if he was unable to tolerate the work." *Id*. at 1067 (¶5). But he also added that "it was unknown whether [the worker] could do his usual work." *Id.* Based on this information, a claims investigator denied him unemployment benefits. *Id*. at (¶6).

¶17.    The worker argued on appeal that he had "good cause" for quitting his job because his

5

physician advised him to quit for health reasons. *Id*. at 1068 (¶10). But we found otherwise, leaning on the physician's admission that "it was unknown whether [the worker] could do his usual work." *Id.* at 1067 (¶5). We further determined that the worker failed to exhaust other "avenues" to remain employed prior to quitting, such as reporting his concerns to human resources. *Id.* at 1067, 1069 (¶¶6, 12). In light of these facts, we held substantial evidence existed to support a finding that the worker voluntarily quit his job without good cause. *Id.* at 1069 (¶12).

¶18.    This appeal is similar to *Hudson*. First, Hereford cannot show that an "ordinary, prudent" person in his predicament would have felt compelled to quit before finding out whether his employer would accommodate his need for a wheelchair. As in *Hudson*, Hereford's doctors never told him that he would need to quit his job as a security officer due to his disability. In fact, his medical provider "left it up to [him]" to determine whether to continue working.

¶19.    Second, even if an "ordinary, prudent person" in his shoes felt compelled to quit, Hereford failed to first explore reasonable avenues to remain employed before leaving his job, as precedent requires. In fact, the security guard expressly admitted during his hearing that he declined to ask his employer for specific accommodations prior to quitting because he believed the job would be too dangerous to perform in a wheelchair. Notably, Hereford decided against discussing further accommodations because he was simply "fed up" with his job. This is not good cause for voluntarily terminating his employment.

¶20.    In light of these facts, we find that substantial evidence existed to support the ALJ's

determination that Hereford failed to demonstrate good cause for leaving his job. As a result, the ALJ's findings were not "arbitrary and capricious." *Conner*, 247 So. 3d at 345 (¶9). Furthermore, Hereford does not dispute that his denial of unemployment benefits was within "the scope of power granted to the agency." *Id*. And nothing in the records supports a finding that Hereford's constitutional rights were violated. Finding no error, we affirm.

¶21.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND WESTBROOKS, JJ., CONCUR. McDONALD AND LAWRENCE, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**