# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-00977-COA

**SONYA DENISE PATTERSON**                                    **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                 **APPELLEES**
**EMPLOYMENT SECURITY AND VALERIE**
**SCOTT INSURANCE**

DATE OF JUDGMENT:            06/03/2019
TRIAL JUDGE:                 HON. KELLY LEE MIMS
COURT FROM WHICH APPEALED:   ALCORN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      SONYA DENISE PATTERSON (PRO SE)
ATTORNEY FOR APPELLEES:      ALBERT B. WHITE
NATURE OF THE CASE:          CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                 AFFIRMED - 01/05/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Sonya Patterson, appearing pro se, appeals the decision of the Circuit Court of Alcorn

County, which affirmed the decision of the Mississippi Department of Employment Security

(MDES) denying her unemployment benefits.  Finding substantial evidence supports the

Board's decision, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Patterson was employed by Valerie Scott Insurance Agency in Tupelo, Mississippi,

for five days, from October 31, 2018, through November 7, 2018.  Patterson resides in

Corinth, Mississippi, but drove to and from her job in Tupelo.  She has a long history of

employment in the insurance industry. Patterson contends that before she started her employment, there was a verbal discussion with Valerie and her husband, Donnell Scott, about Patterson's job title and salary. Patterson claims she was told she would be hired as the office manager, and her pay range would be from $16 to $17 per hour; however, nothing was put in writing at the time.

¶3. After working five days, on November 7, Patterson received an offer letter from Valerie stating her job title was "agent," and her pay was $14.35 per hour. Patterson stated she resigned because her job title and pay rate were not what she was initially told. Also, Patterson claimed the work environment was "hostile" because Valerie mentioned several times a past domestic-violence incident in which Patterson shot her ex-fiancé in the leg during an altercation.[1]

¶4. On November 26, 2018, Patterson filed an initial claim for unemployment benefits. A claims examiner investigated her case. During an MDES interview, Patterson claimed Valerie fired her for not signing the offer letter with a different title and lower pay. Also, Patterson contended she was "constantly harassed about a situation that occurred years ago" but maintained she did not quit. Patterson asked Valerie if she could return to work the next day, but Valerie declined to rehire her.

¶5. During Valerie's MDES interview, she claimed Patterson quit, but she did not know why. Valerie stated that the day Patterson quit, Patterson told her, "I don't like the way you treat me . . . and other things I've seen that I don't like . . . . I'm leaving and I probably

---

[1] In 2016, Patterson was charged with aggravated assault but was ultimately acquitted of all charges based on self-defense.

won't be back." Patterson, however, denied making this comment and claimed Valerie lied about her resignation. Valerie also denied that anyone treated Patterson rudely or harassed her. In December 2018, the claims examiner disqualified Patterson for unemployment benefits, finding she voluntarily quit her job without good cause. Patterson appealed.

¶6. Next, a telephonic hearing occurred between the administrative law judge (ALJ) and Patterson. Valerie declined to participate. Patterson testified that if the title and pay had been what Donnell had offered, she would not have quit. Patterson also testified that Valerie had asked her what she earned at her previous job at Acceptance Insurance, and Patterson responded that she earned between $16 and $17 per hour plus commission. She admitted that Valerie stated her starting pay could increase based on future evaluations. Patterson also conceded she was never under "the threat of discharge" at her job.

¶7. After the hearing, the ALJ affirmed the claims examiner's decision. The ALJ found that Patterson voluntarily left her employment because she did not agree with what was presented to her in the offer letter, and she felt the employer was invading her privacy with references to the past domestic-violence incident. The ALJ understood Patterson's dissatisfaction about the variance between the offer letter and the prior verbal discussion but noted there was nothing in writing about the details of the prior offer. The ALJ found Patterson began employment but then voluntarily resigned when she did not agree with the offer letter. Furthermore, the ALJ noted Patterson was advised she could "move up" based upon future positive evaluations. Finally, while Valerie's alleged comments about Patterson's past domestic incident may not have been appropriate, the ALJ found it did not

3

rise to the level of harassment that would constitute "good cause" to leave employment.

¶8.     The MDES Board of Review (Board) affirmed the findings of fact and decision of the ALJ.  On appeal, the Alcorn County Circuit Court also found the Board's decision was supported by substantial evidence and was not arbitrary or capricious.

## STANDARD OF REVIEW

¶9.     This Court's review of unemployment compensation cases is limited.  If the Board's findings of fact are supported by substantial evidence, absent fraud, they are conclusive, and this Court's review is "confined to questions of law."  Miss. Code Ann. § 71-5-531 (Rev. 2011 & Supp. 2019).  "An agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates a statutory or constitutional right of the complaining party." *Miss. Dep't of Emp. Sec. v. Good Samaritan Pers. Servs.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008).  "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994). This Court "must not reweigh the facts of the case or insert its judgment for that of the agency." *Id.*  If the Board's findings are supported by substantial evidence, and if the relevant law is properly applied, the reviewing court must affirm. *Barnett v. Miss. Emp. Sec. Comm'n*, 583 So. 2d 193, 195 (Miss. 1991).

## DISCUSSION

¶10.    In Patterson's pro se brief, she contends both that she was terminated and that she had

good cause to leave her job voluntarily. In either case, she claims she was improperly denied unemployment benefits. Accordingly, we shall address both contentions.

¶11. "Unemployment benefits are available for employees who leave work involuntarily, through no fault of their own." *Hudson v. Miss. Emp. Sec. Comm'n*, 869 So. 2d 1065, 1067 (¶8) (Miss. Ct. App. 2004). "The question of whether an employee voluntarily leaves his [or her] employment or is terminated is a question of fact to be determined by the MDES." *Waldrup v. Miss. Emp. Sec. Comm'n*, 951 So. 2d 597, 599 (¶9) (Miss. Ct. App. 2007) (citing *Huckabee v. Miss. Emp. Sec. Comm'n*, 735 So. 2d 390, 394 (¶14) (Miss. 1999)). An employee is disqualified from receiving unemployment benefits if he or she left work voluntarily without good cause. Miss. Code Ann. § 71-5-513(A)(1)(a) (Rev. 2011 & Supp. 2019). The burden of proving good cause for voluntarily leaving employment rests with the employee. *Id.* § 71-5-513(A)(1)(c).

¶12. Patterson maintains she merely left early on what ended up being her last day of employment, as she had been doing all week, but Valerie discharged her the next day. Valerie, however, claims Patterson quit. After the parties were interviewed, the claims examiner found Patterson voluntarily quit because of a disagreement about her title and starting salary. Both the ALJ and the Board affirmed this finding of fact. Moreover, Patterson made statements at the ALJ hearing in contradiction to her earlier position that she was discharged. Patterson admitted she would have stayed with the agency had her title and pay been what Donnell promised. She also admitted she was under no threat of discharge. We find substantial evidence supports the finding of the ALJ and Board that Patterson

5

voluntarily left her job.

¶13.   Next, Patterson argues she had good cause to voluntarily quit her employment because she was not given the title or pay that was agreed upon when she was hired and because of Valerie's alleged harassment about Patterson's prior domestic-violence incident. The record is unclear whether there was a firm agreement about Patterson's job title and starting salary, but it is undisputed there was nothing in writing when Patterson was hired. While Patterson claims Donnell made the verbal offer of $16 to $17 per hour with the title "office manager," it is unclear if Valerie made this offer as well, if there was a misunderstanding between Donnell and Valerie, or if Valerie reduced Patterson's salary one week after her hire.

¶14.   MDES acknowledges that "[a] substantial reduction in earnings is generally regarded as good cause for leaving one's employment, . . . but the surrounding circumstances should be considered . . . ." *Miss. Emp. Sec. Comm'n v. Benson*, 401 So. 2d 1303, 1304 (Miss. 1981) (citing 81 C.J.S. *Social Security* § 232).  As MDES calculates, a reduction from $16 per hour to $14.35 per hour is approximately 10.5%.[2]  Caselaw shows the amount considered "substantial" for good cause is a pay reduction where the employee could no longer continue working and pay necessary living expenses such as rent and childcare. *Tate v. Miss. Emp. Sec. Comm'n*, 407 So. 2d 109, 110 (Miss. 1981) (The claimant had good cause for quitting employment after eight weeks as a cook due to substantial reduction in earnings after her hours were reduced by 50%.).  Here, no evidence was provided regarding how

_____

[2] We quote the figure of 10.5% because as MDES notes, "[p]resumably, Patterson would not have quit if her starting wage had been $16.00 per hour."

6

Patterson's living expenses were impacted by her alleged salary reduction. Further, the surrounding circumstances here show this figure was merely a starting salary, not a pay "reduction" after a longer period of employment. Moreover, evidence showed Patterson was told she could receive a raise after positive evaluations in the future. Instead, Patterson voluntarily quit after working only five days. Our holding is that this 10.5 % reduction, applied to the facts of this specific case, with Patterson having just started her job and being told this was merely a starting salary with the possibility of a raise after a positive evaluation, cannot be considered a substantial reduction in earnings that would justify unemployment benefits.

¶15.    Regarding Patterson's alleged harassment by Valerie, there was substantial evidence to support the ALJ and Board's finding that while possibly inappropriate, Valerie's comments about the domestic violence incident did not constitute good cause to leave her employment.[3] Patterson complained that Valerie's mention of the incident several times during her five days of employment was an invasion of her privacy. However, the incident is a matter of public record because Patterson was charged with aggravated assault, and it was also reported in a local newspaper. As far as Valerie's creating a "hostile work environment," it is unclear whether Patterson expressed her offense about Valerie's comments to her and if they continued thereafter. Furthermore, Valerie denies Patterson's claims. We find substantial evidence supports MDES's finding that the isolated comments

---

[3] *See Hudson*, 869 So. 2d at 1066-67, 1069 (¶¶2-3, 12) (The claimant did not have good cause to voluntarily quit employment after eight days as a pipe fitter because he claimed foreman's instructions to stay busy were harassment and caused a health condition.).

Patterson cites do not rise to the level of good cause to leave her employment.

¶16.    In conclusion, we affirm the denial of Patterson's unemployment benefits.

¶17.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**