# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CC-01300-COA

EMMANUEL STALLWORTH                                        APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                        APPELLEE
EMPLOYMENT SECURITY

DATE OF JUDGMENT:              12/08/2022
TRIAL JUDGE:                   HON. KATHY KING JACKSON
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        EMMANUEL STALLWORTH (PRO SE)
ATTORNEY FOR APPELLEE:         ALBERT B. WHITE
NATURE OF THE CASE:            CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                   AFFIRMED - 10/01/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Emmanuel Stallworth appeals pro se from the Jackson County Circuit Court's judgment affirming the decision of the Mississippi Department of Employment Security (MDES) Board of Review, which found that he was disqualified from receiving unemployment benefits. The Board's decision was supported by substantial evidence, and it was neither arbitrary nor capricious. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2.     Stallworth worked for IP Casino Resort Hotel Spa for nearly three years. His employment ended on August 17, 2020, when the Casino was unable to reach him after he exceeded the Casino's policy on absences. Concluding that Stallworth had abandoned his

employment, the Casino sent him a termination letter on August 17.

¶3. After Stallworth filed a claim for unemployment benefits, an MDES claims examiner found that Stallworth had "not shown good cause under the Mississippi Employment Security Law for voluntarily leaving employment . . . when [he] failed to report to work or advise [the Casino] of [his] absence." The claims examiner thus concluded that Stallworth was disqualified from receiving unemployment benefits. Stallworth appealed.

¶4. During the first of two hearings before an administrative law judge (ALJ), Stallworth testified that his employment ended on March 19, 2020, when the Casino furloughed employees due to the COVID-19 pandemic. Casino employees said that Stallworth returned to work after the furlough ended on May 20, 2020, and his employment was terminated on August 17, 2020. Because Stallworth denied that he had ever returned to work, the ALJ recessed so the Casino could obtain records that would resolve the conflicting testimony.

¶5. When the hearing before the ALJ reconvened in April 2022, Stallworth agreed that the Casino had terminated his employment on August 17, 2020. Collectively, two Casino employees testified that Stallworth called in sick for shifts on August 4, 2020, and August 8-11, 2020. On August 12, 2020, Stallworth missed work without calling in. Upon that "no-call, no-show" absence, Stallworth exceeded the Casino's absenteeism policy.[1] Stallworth

---

[1] The ALJ aptly summarized the Casino's absenteeism policy as follows:

The [Casino] [has] . . . an attendance point system which allots points for attendance violations. An absence with proper notification is allotted one (1) point, an absence without proper notification is allotted one and a half (1.5) points, and a no-call/no-show is allotted six (6) points. A total of twelve (12) points will result in termination.

2

incurred additional "no-call, no-show" absences on August 15, 2020, and August 16, 2020. During his absences, a Casino employee told Stallworth that his absences would be excused if he obtained a positive test result for COVID-19. The Casino employee also urged Stallworth to report to the Casino's free on-site clinic. Stallworth never provided anything to corroborate his assertion that he contracted COVID-19 anytime during August 2020. On August 17, 2020, the Casino sent Stallworth the termination letter.

¶6.    In the ALJ's written decision, the ALJ noted that "[o]ver multiple communications leading up to August 12, 2020, [Stallworth] indicated [to the Casino] that he did not feel well but made no mention of having Covid." And having reviewed Stallworth's phone records, the ALJ found that "[n]one of [them] show that [Stallworth] initiated a phone call to the [Casino] after August 11, 2020." However, the ALJ emphasized that Casino employees had unsuccessfully tried to call Stallworth and his wife numerous times on August 13, 2020, August 14, 2020, and again on August 17, 2020. According to the ALJ, "[a]n ordinary prudent person would make every effort to remain employed, including keeping in contact with the employer. It is the employee's responsibility to contact the employer in the event of an absence, not the employer's responsibility to contact the employee." Ultimately, the ALJ found that Stallworth was disqualified from receiving unemployment benefits because he "did not make every reasonable effort to preserve employment. Therefore, he voluntarily left employment, and he [did not show] good cause within the meaning of the Law to constitute payment of unemployment insurance benefits."

¶7.    Stallworth appealed to the Board of Review, which affirmed after fully adopting the

ALJ's findings of fact and conclusions. The circuit court affirmed the Board of Review's decision. Stallworth's latest appeal has been assigned to this Court.

**DISCUSSION**

¶8. In his pro se brief, Stallworth lists four separate issues that all boil down to one argument that there was not substantial evidence to support the decision that he voluntarily left his employment with the Casino without good cause. "[T]he findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Rev. 2021). Thus, this Court "must not reweigh the facts of the case or insert its judgment for that of the agency." *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994).

¶9. "An agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates a statutory or constitutional right of the complaining party." *Miss. Dep't of Emp. Sec. v. Good Samaritan Pers. Servs. Inc.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008). "[A] rebuttable presumption exists in favor of the administrative agency[,]" and Stallworth "has the burden of proving otherwise." *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp. Sec. Comm'n*, 129 So. 3d 178, 183 (¶13) (Miss. 2013).

¶10. "Unemployment benefits are available for employees who leave work involuntarily, through no fault of their own." *Hudson v. Miss. Emp. Sec. Comm'n*, 869 So. 2d 1065, 1067 (¶8) (Miss. Ct. App. 2004). An employee is disqualified from receiving unemployment

4

benefits if he or she voluntarily left work without good cause. Miss. Code Ann. § 71-5-513(A)(1)(a) (Rev. 2001). The burden of proving good cause for voluntarily leaving employment rests with the employee. *Id*. § 71-5-513(A)(1)(c). MDES Unemployment Insurance Regulation 309.00 states that in order to prove this fact, a person must demonstrate that an "ordinary[,] prudent employee" in his predicament would feel compelled to terminate his employment. He must also show that prior to leaving his job, he "[explored] alternatives to quitting" and "[made] reasonable efforts to preserve employment" according to Regulation 309.00.

¶11. Stallworth has not met his burden, and there was substantial evidence to support the Board of Review's decision. Stallworth was aware of the Casino's point system for absences. When he called in sick on August 4, 2020, he had 7.5 absence points. He continued to incur points when he called in sick on August 8, 2020; August 9, 2020; August 10, 2020; and August 11, 2020. At that time, he had eleven out of twelve allowable absence points. Stallworth knew how many points he had. Indeed, he testified that "I know that at twelve points I'm automatically terminat[ed] and . . . I was already at eleven points on the 11th."

¶12. On August 12, 2020, he incurred a "no-call, no-show" absence when he missed work without calling in. That pushed him over the limit of the Casino's absence policy. Stallworth assumed that his employment was automatically terminated at that time. Casino employees testified otherwise. The Casino produced evidence that Lead Supervisor Larry Hosey had tried to call Stallworth on August 12, but Stallworth did not answer his call or otherwise

5

attempt to contact him. Stallworth disputed that evidence. He asserted that his phone records demonstrate his attempts to contact Hosey. But he was mistaken. His phone records showed that Hosey originated the unanswered calls to Stallworth. Nevertheless, Stallworth conceded that he had exceeded the allowable number of absence points on August 12.

¶13.     The Casino also produced evidence that Hosey had also unsuccessfully tried to contact Stallworth on August 13, 2020, but Stallworth never tried to contact anyone at the Casino on that date. Exhibit ER9 depicts a screenshot of a partial text-message exchange between Stallworth and his supervisor, Jeffrey James. Stallworth takes issue with the fact that the Casino did not introduce the entire exchange, so it is unclear who originated it and when. Even so, Stallworth also participated in the exchange, so he could have resolved any ambiguities by producing the entire exchange. In any event, during the exchange, Stallworth said that he "was trying [his] best to recover but [he] exhausted [him]self in extreme temperature and didn't know how it would [a]ffect [him] so [he was] just not able to get around . . . ." James responded Stallworth needed "to call HR . . . to set [up] an appointment with the Clinic to get tested for Covid-19 and that will help with [absenteeism] points but [he] need[ed] to call HR then get tested."

¶14.     On August 14, 2020, James again urged Stallworth "to call HR . . . [a]s soon as" he could. Stallworth's wife testified that she was aware of James's texts. There is no indication that Stallworth responded or ever reported anywhere to be tested. Stallworth testified, "I was sick. . . . I couldn't talk, . . . I wasn't even responding to my phone calls." He added, "I wasn't trying to . . . deal with cell phones or whatnot. I was trying to recover." But his

6

phone records demonstrated that he and his wife exchanged phone calls or texts thirty-one times between August 12 and August 17.

¶15. Stallworth continued to incur "no-call, no-show" absences on August 15, 2020, and August 16, 2020. Even so, the Casino did not terminate his employment at that time. When Stallworth incurred another "no-call, no show" absence on August 17, 2020, the Casino sent him a termination letter. Stallworth presented no evidence or testimony that he had availed himself of the Casino's on-site clinic to be tested for COVID-19. Stallworth's wife testified that "we didn't know for sure that it was Covid . . . . [W]e just knew he had the symptoms." According to Stallworth and his wife, Stallworth later attempted to donate blood and discovered that he had contracted COVID-19 at some point in the past, but there was no evidence that he sought testing or treatment for any illness during the events that led to the termination of his employment. Extrapolating his wife's testimony, it was early December 2021 when Stallworth first learned that he had contracted COVID-19 sometime in the past.

¶16. Finally, Stallworth disputes that he voluntarily left his employment. For support, he points to exhibit ER, the "Personnel Action Form" documenting Stallworth's termination. On it, in the "EMPLOYMENT SEPARATION" area of the form, a box is checked next to "Involuntary." According to Stallworth, the MDES could not have reasonably found that he voluntarily left employment without good cause. Because the Casino fired him and he did not quit, his termination was involuntary. His involuntary termination occurred because he voluntarily left his employment without good cause.

**CONCLUSION**

¶17. There was substantial evidence to support the MDES's conclusion that Stallworth is disqualified from receiving unemployment benefits because he voluntarily left work without good cause. Although Stallworth exceeded the Casino's allowable number of absence points, he was given opportunities to preserve his employment by demonstrating that he had COVID-19 or some other illness. Stallworth did not avail himself of those opportunities. Accordingly, we affirm the circuit court's judgment.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**